UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Civil Action No.  02-CV-11738-NG |
| *ex rel.* | ) | |
| CONSTANCE A. CONRAD | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ABBOTT LABORATORIES, INC. | ) | |
| ACTAVIS MID-ATLANTIC, LLC. | ) | **NINTH AMENDED FALSE** |
| f/k/a Alpharma, Inc., | ) | **CLAIMS ACT COMPLAINT** |
| BIOVAIL PHARMACEUTICALS, LLC, | ) | |
| BLANSETT PHARMACAL COMPANY, INC., | ) | |
| CYPRESS PHARMACEUTICALS, INC., | ) | |
| DURAMED PHARMACEUTICALS, INC., | ) | |
| FERNDALE LABORATORIES, INC., | ) | |
| GOLDLINE LABORATORIES, INC., | ) | |
| HEALTHPOINT, LTD., | ) | |
| HAWTHORN PHARMACEUTICALS, INC., | ) | |
| HI-TECH PHARMACAL COMPANY, INC., | ) | |
| MEDPOINTE, INC.,  f/k/a Carter Wallace, Inc. | ) | |
| MYLAN INC. | ) | |
| f/k/a Mylan Laboratories, Inc. | ) | |
| PAMLAB, LLC., | ) | |
| f/k/a Pan American Laboratories, Inc., | ) | |
| QUALITEST PHARMACEUTICALS, INC., | ) | |
| RUGBY LABORATORIES, INC., | ) | |
| SCIELE PHARMA, INC. f/k/a First | ) | |
| Horizon Pharmaceutical Corp., | ) | |
| SHIRE US, INC., | ) | |
| TEVA PHARMACEUTICALS USA, INC., | ) | |
| f/k/a Copley Pharmaceutical, Inc., | ) | |
| THE HARVARD DRUG GROUP, LLC | ) | |
| d/b/a Major Pharmaceuticals, | ) | |
| UNITED RESEARCH LABORATORIES, INC., | ) | |
| WARNER CHILCOTT CORPORATION | ) | |
| WATSON LABORATORIES, INC. – FLORIDA | ) | |
| f/k/a Andrx Pharmaceuticals, Inc. | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

# TABLE OF CONTENTS

I.      Nature Of The Case.................................................................................................. 1

II.     Federal Jurisdiction and Venue ............................................................................. 4

III.    The Parties.............................................................................................................. 4

IV.     Applicable Law And Medicaid Rebate Program Requirements ........................... 8

        A. The False Claims Act........................................................................................ 8

        B. The Food, Drug And Cosmetic Act .................................................................. 9

        C. Medicaid And Its Outpatient Prescription Drug Coverage .............................. 10

        D. The Definition of Covered Outpatient Drug..................................................... 11

        E. The Manufacturers' Responsibility To Accurately Report Their Covered Outpatient
        Drugs To CMS ...................................................................................................... 13

V.      How Defendants' False Submissions Corrupted The Covered Outpatient Drug Database
        And Caused The Submission Of False Claims ...................................................... 15

        A. False Claims Submitted For Unapproved Drugs, Under The Guise Of
        Their Being Covered Outpatient Drug Products..................................................... 16

                1. Unapproved New Drugs ...................................................................... 18

                        a. Carbinoxamine ........................................................................ 17

                        b. Extended Release Products ...................................................... 23

                        c. Hydrocodone Products ............................................................. 33

                        d. Other Unapproved New Drugs That Do Not Meet The Definition Of A
                        Covered Outpatient Drug .............................................................. 41

                2. DESI Less Than Effective Drugs........................................................ 41

                        a. Nitroglycerin Transdermal ...................................................... 43

                        b. Oral Nitroglycerin (Controlled Release)................................. 45

                        c. Other DESI LTE Drugs............................................................ 47

                3. Unapproved Levothyroxine – A Serious Threat To Public Health.................. 60

        B. How Defendants' False Submissions Caused False Claims For Vitamins, Minerals
        And Other Dietary Supplements........................................................................... 64

        C. Defendants' False Statements Caused Medicaid Payments To Be Made For Their
        Non-Drug Products ............................................................................................... 67

                1. Non-Drugs Medicaid Paid For As A Result Of Defendants' Fraud ................. 68

VI.     Causes of Action ................................................................................................... 78

## I.      Nature Of The Case

1.      Constance A. Conrad ("Relator") brings this action on behalf of the United States of America ("United States") for treble damages and civil penalties arising from Defendants' violations of the Federal Civil False Claims Act, 31 U.S.C. § 3729, *et seq.* ("FCA"). Defendants submitted false records or statements to the United States through the federal Center for Medicare and Medicaid Services ("CMS") and thereby caused false claims for payment to be made through state Medicaid programs for unapproved or ineffective drugs, or for products that are not drugs at all.

2.      Medicaid provides prescription drug reimbursement only for statutorily defined "Covered Outpatient Drugs." "New Drugs" that the FDA has not approved are expressly excluded from the definition, as are non-drug items, like vitamins, minerals and other dietary supplements. The products sold to Medicaid which are identified in this Complaint are not approved by the FDA and have never been proven safe and effective. Nevertheless, Defendants reported false information to CMS regarding these products, representing that they met the definition of a Covered Outpatient Drug to make them ostensibly eligible for Medicaid reimbursement.

3.      This false information corrupted CMS's list of Medicaid reimbursable drugs, caused claims for ineligible products to be submitted to state Medicaid programs, led state programs to pay for and in turn seek reimbursement from CMS for such ineligible drugs, and thereby caused CMS to pay false claims, all in violation of 31 U.S.C. §§ 3729(a)(1)(A) and (B).

4.      The Defendants' FCA violations fall into four categories:

    (i)      knowingly submitting false information concerning "New Drugs" that have not been FDA approved, thereby causing false claims to be made;

1

(ii)     knowingly submitting false information concerning drugs which have not been FDA approved, and which have been determined to be "Less Than Effective" for all indications, thereby causing false claims to be made;

(iii)    knowingly submitting false information concerning dietary supplements, which are not drugs, thereby causing false claims to be made;

(iv)     knowingly causing to be presented false claims by the submission of the false information described herein.

5.      The Defendants' FCA violations caused the federal and state governments to pay well in excess of $500 million in false claims.  This number represents only the amounts specifically identified in the body of the Complaint, and even those amounts do not encompass all of the years for which such false claims were paid.

6.      But for Defendants' express misrepresentations that their products were Covered Outpatient Drugs and therefore Medicaid-eligible, the federal government and the states would not have paid untold millions in reimbursement claims and Defendants would not have had illegal access to the enormous Medicaid market.

7.      The Defendants' unapproved drugs are not only ineligible for Medicaid coverage, their manufacture and sale violates the Food, Drug and Cosmetic Act, 21 U.S.C. § 355(a), and subjects the Defendants to criminal penalties as well.  *See* 21 U.S.C. § 331(d). Defendants' submission of them to Medicaid for coverage is therefore doubly reckless and brazen. For the purposes of clarity and brevity in this Complaint, Defendants' unapproved drugs are called "Illegal Drugs."

8.      The Defendants' dietary supplements are not "drugs" by any definition, and as such do not even remotely satisfy the Covered Outpatient Drug criteria. Among other exclusionary markers, unless a product is legally required to carry a National Drug Code ("NDC") number, it is expressly excluded from the definition of a Covered Outpatient Drug. 42

2

U.S.C. §1396r-8(k)(3). Dietary Supplements are not required to carry an NDC, but as Medicaid's

payment system identifies products by those NDC numbers, Defendants unilaterally created

NDCs for their supplements and so reported them to CMS. Without these rogue NDCs,

Defendants' Non-Drugs could never have infiltrated the Medicaid Drug Rebate Program. For the

purposes of clarity and brevity in this Complaint, these dietary supplements are called "Non-

Drugs."

9.      The Defendants knew that the Illegal Drugs and Non-Drugs that are the subject of

this Complaint were not Medicaid eligible Covered Outpatient Drugs. The Defendants also knew

that CMS would rely on their representations in creating the Medicaid eligible prescription drug

list it maintains, and that their products' inclusion as Covered Outpatient Drugs on that list would

result in the submission and payment of false claims.  So Defendants misrepresented their

products to make them appear eligible.

10.      This *qui tam* also seeks to recover losses caused by false claims submitted to other

federally funded healthcare programs, including but not limited to Medicare, Tricare, Veterans

Administration and Federal Employees Health Benefit. These additional claims for damages are

limited to the Defendant: HEALTHPOINT (Xenaderm product only).  For instance, Healthpoint,

the manufacturer of Xenaderm (HEALTHPOINT) represented this product to be a Medicare

Covered Outpatient Drug when submitting documentation to become eligible for Medicare Part

D.  As a result of Medicare's reliance upon these false representations, this drug was mistakenly

covered under Medicare Part D from January 1, 2006 until Medicare discovered the deception.

11.      Each Defendant's liability is premised upon a single, simple element – the

knowing submission to CMS of false information, which misidentified unapproved drugs and

dietary supplements which defendants manufactured and sold, as Covered Outpatient Drugs.

3

## II.      Federal Jurisdiction and Venue

12.      The acts proscribed by 31 U.S.C. § 3729, *et seq*., and complained of herein

occurred in the District of Massachusetts and elsewhere. Therefore, this Court has jurisdiction

over this case pursuant to 31 U.S.C. § 3732(a), as well as under 28 U.S.C. § 1345.

13.      Venue is proper in this District pursuant to 31 U.S.C. § 3732(a) because

Defendants transact business in this District and one or more of the acts proscribed by 31 U.S.C.

§ 3729 occurred in this District.

14.      The allegations contained in this action have not been the subject of a public

disclosure pursuant to § 3730(e)(4)(A) of the FCA.

## III.     The Parties

15.      The United States funds the provision of medical care, including pharmaceutical

products, for eligible individuals through government healthcare programs such as Medicaid,

Medicare, TRICARE, and other agencies and programs (hereinafter "Government Healthcare

Programs"), acting through CMS.

16.      Relator, Constance A. Conrad, is a resident of the state of Pennsylvania.  Ms.

Conrad has over 30 years experience in the federal healthcare programs field.

17.      The Defendants are drug manufacturers, distributors, and labelers. For brevity,

when not referred to herein as "Defendants", they are simply called "manufacturers". The

Defendants named in this Complaint shall include any successor (by merger, operation of law or

otherwise) or assigns of such entity.

18.      All Defendants engaged in the business of manufacturing, marketing, distributing

and/or selling Illegal Drugs or Non-Drugs, a substantial portion of which ultimately were paid

for by government healthcare programs throughout the United States. These Illegal Drugs or

4

Non-Drugs include, but are not limited to the Illegal Drugs and Non-Drugs identified in this Complaint. At all material times, all Defendants transacted substantial business with the Commonwealth of Massachusetts, including business unrelated to the Illegal Drugs or Non-Drugs and misrepresentations made to government healthcare programs described in this complaint.

        A.      Abbott Laboratories, Inc.  ("ABBOTT") is an Illinois Corporation with its principal place of business in Abbott Park, IL.

        B.      Actavis Mid-Atlantic LLC ("ACTAVIS"), f/k/a Alpharma Pharmaceutical, Inc., is a Delaware Limited Liability Company with its principal place of business in Morristown, NJ.

        C.      Biovail Pharmaceuticals, LLC ("BIOVAIL"), f,k/a Biovail Pharmaceuticals, Inc., is a Delaware Limited Liability Company with its principal place of business in Bridgewater, NJ.  It is a subsidiary of Biovail Corporation, Canada.

        D.      Blansett Pharmacal Company Inc. ("BLANSETT") is an Arkansas Corporation with its principal place of business in North Little Rock, AR.

        E.      Cypress Pharmaceuticals, Inc. ("CYPRESS") is a Mississippi Corporation with its principal place of business in Madison, MS.

        F.      Duramed Pharmaceuticals Inc. ("DURAMED") is a Delaware Corporation with its principal place of business in Ohio. Duramed is a subsidiary of Barr Pharmaceuticals, Inc., a Delaware Corporation (Barr is a subsidiary of TEVA).

        G.      Ferndale Laboratories, Inc. ("FERNDALE") is a Michigan Corporation with its principal place of business in Ferndale, MI.

H.      Goldline Laboratories, Inc. ("GOLDLINE"), a division of Ivax

Corporation, which is a subsidiary of Teva Pharmaceutical Industries, Ltd., is a Florida

Corporation with its principal place of business in Miami, FL.

I.      Healthpoint, Ltd. ("HEALTHPOINT"), a subsidiary of DFB

Pharmaceuticals, is a Texas Corporation with its principal place of business in Fort Worth, TX.

J.      Hawthorn Pharmaceuticals, Inc. ("HAWTHORN") is a Mississippi

Corporation with its principal place of business in Madison, MS.

K.      Hi-Tech Pharmacal Company, Inc. ("HI-TECH") is a Delaware

Corporation with its principal place of business in Amityville, NY. Hi-Tech Pharmacal

Company, Inc. is also named in this lawsuit as responsible for the actions of E. Claiborne Robins

Company, Inc. d/b/a ECR Pharmaceuticals. On February 27, 2009 Hi-Tech Pharmacal Co., Inc.

entered into an asset purchase agreement with E. Claiborne Robins Company, Inc. d/b/a ECR

Pharmaceuticals, to purchase substantially all of the assets of ECR for a purchase price of

$5,138,082.

L.      Medpointe, Inc. ("MEDPOINTE"), n/k/a Medpointe Pharmaceuticals,

Corporation, a subsidiary of MEDA AB, (purchased in August 2007), is a Delaware Corporation

with its principal place of business in Somerset, NJ.  Medpointe was previously known as Carter-

Wallace, Inc. up to 2001.

M.      Mylan, Inc., ("MYLAN"), f/k/a Mylan Laboratories, Inc., is a

Pennsylvania corporation, with its principal place of business in Canonsburg, PA. Mylan sold its

product Granulex under two different labeler numbers at issue herein. The first, 62794, is Bertek

Pharmaceuticals and the second, 00514 Dow Hickham Pharmaceuticals, Inc., both of which have

become Mylan Bertek Pharmaceuticals, Inc., a subsidiary and/or division of Mylan, Inc.  For

6

brevity all Granulex sales are identified in the complaint by reference to Mylan.

        N.      Pamlab, L.L.C., ("PAN AMERICAN"), f/k/a Pan American Laboratories, Inc., is a Louisiana Limited Liability Company with its principal place of business in Covington, LA.

        O.      Qualitest Pharmaceuticals, Inc. ("QUALITEST"), a subsidiary of Apax Partners, is an Alabama Corporation with its principal place of business in Huntsville, AL.

        P.      Rugby Laboratories, Inc. ("RUGBY"), is a New York Corporation with its principal place of business in Corona, CA.

        Q.      Sciele Pharma, Inc. ("SCIELE"), f/k/a First Horizon Pharmaceutical Corporation, is a Delaware Corporation with its principal place of business in Atlanta, GA. Shareholders approved the name change at the company's Annual Meeting in June 2006.

        R.      Shire US, Inc. ("SHIRE"), a subsidiary of Shire Pharmaceuticals Group (of the United Kingdom), is a New Jersey Corporation with its principal place of business in Florence, KY.

        S.      Teva Pharmaceuticals USA, Inc. ("TEVA"), f/k/a Copley Pharmaceutical, Inc., is a Delaware Corporation with its principal place of business in North Wales, PA.

        T.      The Harvard Drug Group, LLC, d/b/a Major Pharmaceuticals ("MAJOR"), is a Michigan Limited Liability Corporation with its principal place of business in Livonia, MI.

        U.      United Research Laboratories, Inc. ("UNITED"), a/k/a United Research Laboratories/Mutual Pharmaceutical Company (URL/Mutual), is a Pennsylvania Corporation with its principal place of business in Philadelphia, PA.

7

V.      Warner Chilcott, Corporation ("WARNER"), f/k/a Warner Chilcott, Inc.,
is a Delaware Corporation with its principal place of business in Rockaway, NJ.

W.      Watson Laboratories, Inc. - Florida ("WATSON"), f/k/a Andrx
Laboratories, Inc., is a Florida Corporation with its principal place of business in Davie, FL. In
September 2008, after it was purchased by Watson Pharmaceuticals, Inc., Andrx
Pharmaceuticals Inc.'s name was changed to Watson Laboratories, Inc. - Florida.

19.     At all times relevant hereto, Defendants acted through their agents and employees
and the acts of Defendants' agents and employees were within the scope of their agency and
employment.  The policies and practices alleged in this Complaint were conducted on a regular,
repeated and continuous basis, as a regular course of doing business over a substantial period of
years. Whenever reference is made in this Ninth Amended Complaint to any representation, act
or transaction of any of the Defendants, such allegation shall be deemed to mean that the
principals, officers, directors, employees, agents or representatives, while actively engaged in the
course and scope of their employment, engaged in or authorized such representations, acts or
transactions on behalf of each of said Defendant, deliberately ignored the truth or falsity of the
information provided to Medicaid, or acted with reckless disregard of the truth or falsity of such
information.

## IV.     Applicable Law And Medicaid Rebate Program Requirements

### A. The False Claims Act

20.     The FCA provides that any person who knowingly presents, or causes to be
presented, a false or fraudulent claim for payment or approval, or knowingly makes, uses, or
causes to be made or used a false record or statement material to a false or fraudulent claim, is
liable for a civil penalty ranging from $5,000 up to $10,000 for each such claim as adjusted by

the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 note; Public Law

104-410), plus three times the amount of the damages sustained by the Government. 31 U.S.C.

§§ 3729(a)(1). A "claim" means any request or demand for money or property provided by the

Government under one of its programs, such as Medicaid. 31 U.S.C. §§ 3729(b)(2). Claims made

to the states are actionable if the Government will reimburse the state for any portion of the

claim. 31 U.S.C. § 3729(b)(2)(A).

21.     The Act allows any person having information about false or fraudulent claims to

bring an action for himself and the Government, and to share in any recovery.  Based on these

provisions, *qui tam* Relator seeks through this action to recover all available damages, civil

penalties, and other relief for the violations alleged herein.

### B. The Food, Drug And Cosmetic Act

22.     Under the Food, Drug and Cosmetic Act ("FDCA"), 21 U.S.C. § 301, *et seq.,*

every "New Drug" must be approved by the FDA for safety and effectiveness before it can be

marketed. 21 U.S.C. § 355(a). The FDA has determined all of the drugs identified in this

Complaint to be "New Drugs", and therefore these drugs cannot be legally sold without FDA

approval.

23.     The sale of unapproved drugs is illegal, with rare exceptions for drugs that meet

compelling medical need. *See* FDA's Final (2006) *Marketed Unapproved Drugs- Compliance*

*Policy Guide* (hereinafter "*Final Compliance Guide*"), a copy of which is attached as **Exhibit A**.

24.     The use of unapproved, illegally marketed drugs poses a serious health risk to

patients, particularly Medicaid recipients, many of whom are elderly or disabled, and who have

extensive healthcare needs. The FDA has acknowledged this threat: "[r]ight now, many

unapproved drugs represent a public health threat because consumers wrongly assume that these

widely marketed and available drugs are approved and have been found to be safe and effective

by the FDA." June 8, 2006 FDA Press Release, *FDA Acts To Improve Drug Safety And Quality*.

The FDA estimates that there are several thousand illegally marketed drugs in use today and is

constantly striving to identify these drugs and get them off the market. *See Final Compliance

Guide*, Exhibit A at 2.

### C. Medicaid And Its Outpatient Prescription Drug Coverage

25.     Medicaid is a joint federal-state program that provides healthcare benefits for low

income Americans.

26.     The Government reimburses state Medicaid agencies for portions of certain

expenses, including the purchase of prescription drugs. This federal reimbursement is known as

the Federal Medical Assistance Percentage ("FMAP") or Federal Financial Participation

("FFP"). 42 U.S.C. § 1396d(b).

27.     To make their products eligible for Medicaid reimbursement, manufacturers first

must enter into a Drug Rebate Agreement with the U.S. Department of Health and Human

Services ("HHS"), under which they agree to rebate a portion of the drug's purchase price to the

states as consideration for participation in the Medicaid program. Once a manufacturer enters

into a Rebate Agreement, all of that manufacturer's "Covered Outpatient Drugs" become eligible

for coverage under state Medicaid programs that provide prescription drug benefits, as all do.

The Rebate Agreement requires manufacturers to submit quarterly reports to CMS reaffirming

and updating the products that the manufacturer expressly represents as eligible for Medicaid

reimbursement.

28.     The manufacturers typically sell their products to wholesalers and other

distributors of drug products, who in turn sell to pharmacies and other providers. When a

10

provider dispenses to a Medicaid recipient an ostensibly eligible "Covered Outpatient Drug", so indicated by the product being on the Medicaid Drug Product Rebate Initiative ("MDRI") List, the provider makes a claim and is reimbursed by the state Medicaid program. The state Medicaid program then seeks FFP for the ostensibly eligible product, and, again relying on the MDRI List, the government pays the state its FFP share. It is by this process that the manufacturers illegally profit from their participation in the Medicaid rebate program.

29.     Drug manufacturers have a compelling incentive to participate in the Medicaid Drug Rebate Program, as it guarantees them access to the huge Medicaid market. In 2007 alone, Medicaid and other government healthcare programs spent more than $70 billion on prescription drugs, representing more than 30% of all U.S. prescription drug spending.

### D. The Definition of Covered Outpatient Drug

30.     Medicaid provides prescription drug reimbursement only for statutorily defined "Covered Outpatient Drugs."  Covered Outpatient Drugs, generally speaking, are only those drugs which may be dispensed by prescription and which are approved for safety and effectiveness as a prescription drug by the FDA. 42 U.S.C. § 1396r-8(k)(2)(A).

31.     Substances for which an FDA-issued National Drug Code number is not required – dietary supplements, for example – are not Covered Outpatient Drugs.  42 U.S.C. § 1396r-8(k)(3).

32.     In 1962, Congress amended the Federal Food, Drug and Cosmetic Act to provide greater regulation of drugs sold in the United States.  Under those amendments, all new drugs must be shown by adequate studies to be both "safe and effective" before they can be marketed. Drugs approved as merely "safe" prior to 1962 (i.e. those approved between 1938 and 1962) had to be reviewed as to their effectiveness under the Drug Efficacy Study Implementation ("DESI")

11

program. A DESI review of over 3,400 drugs that entered the market between 1938 and 1962

was undertaken in the 1960s and 1970s.  If the DESI review indicated a lack of substantial

evidence of a drug's effectiveness for all of its labeled indications, the FDA published a Notice

of Opportunity for a hearing concerning its proposal to withdraw approval of the drug for

marketing.  A manufacturer of that drug, or drugs "identical, related or similar" ("IRS") to that

drug, could request a hearing and attempt to provide evidence of the drug's effectiveness.  Drugs

for which a Notice of Opportunity for hearing has been published are referred to as "less-than-

effective" ("LTE" or "DESI-LTE") drugs unless they receive FDA approval.  The IRS

counterpart of a DESI-LTE drug is also considered less than effective. "DESI drugs" deemed

"Less Than Effective for *all* indications" are not Covered Outpatient Drugs under the Medicaid

program.

33.     Even if the FDA's final DESI determination classifies the drug product as

effective for all or just some of its labeled indications, the drug and its IRS counterparts may

only be marketed—and thus qualify as a Covered Outpatient Drug— if the manufacturer obtains

FDA approval of a New Drug Application establishing the drug's safety and effectiveness for

those indications. All drugs in the DESI program, LTE or not, are New Drugs for which FDA

approval is required.

34.     The drugs and other products named in this Complaint also fail to meet the

definition of a Covered Outpatient Drug because they generally could not be prescribed for a

"medically accepted indication." 42 U.S.C. §1396r-8(k)(3) excludes any drug from the definition

of a "Covered Outpatient Drug" which is "used for a medical indication, which is not a

medically accepted indication." 42 U.S.C. §1396r-8(6) defines "medically accepted indication"

as "any use for a Covered Outpatient Drug which is approved under the Federal Food, Drug and

Cosmetic Act, or the use of which is supported by one or more citations included or approved for inclusion in any of the compendia described in subsection (g)(1)(B)(i) of this section." Since the drugs identified in this Complaint are not FDA-approved, neither they nor their ingredients are supported by one or more citations included or approved for inclusion in any of the compendia described in subsection (g)(1)(B)(i).

35.     At all times, Congress and CMS have intended that only Covered Outpatient Drugs be included in the Medicaid Drug Rebate Program and have not intended for non-FDA approved drugs to be covered by Medicaid.

**E. The Manufacturers' Responsibility To Accurately Report Their Covered Outpatient Drugs To CMS**

36.     Each defendant entered into its respective Medicaid Drug Rebate Agreement with the Government on or about the dates listed below:

| Defendant | Labeler Code | Effective Date |
|---|---|---|
| ABBOTT | (00074) | January 1, 1991 |
| ACTAVIS | (00472) | January 1, 1991 |
| BLANSETT | (51674) | January 1, 1991 |
| DURAMED | (51285) | January 1, 1991 |
| BERTEK | (62794) | January 1, 1997 |
| | (00514) | July 1, 2004 |
| BIOVAIL | (64455) | April 1, 1999 |
| CYPRESS | (60258) | October 1, 1993 |
| FERNDALE | (00496) | January 1, 1991 |
| GOLDLINE | (00182) | January 1, 1991 |
| HEALTHPOINT | (00064) | July 1, 1995 |
| HAWTHORN | (63717) | July 1, 1999 |
| HI-TECH | (50383) | January 1, 1991 |
| HI-TECH (ECR) | (00095) | October 1, 1991 |
| MAJOR | (00904) | January 1, 1991 |
| MEDPOINTE | (00037) | January 1, 1991 |
| MYLAN f/k/a Bertek | (62794) | January 1, 1997 |
| MYLAN f/k/a Dow Hickam | (00514) | July 1, 2004 |
| PAN AMERICAN | (00525) | January 1, 1991 |
| QUALITEST | (00603) | January 1, 1991 |

13

| RUGBY | (00536) | January 1, 1991 |
| SCIELE | (59630) | January 1, 1991 |
| SHIRE | (54092) | April 1, 1993 |
| TEVA | (38245) | January 1, 1991 |
| UNITED | (00677) | January 1, 1991 |
| WARNER | (00047) | January 1, 1991 |
| WATSON | (62022) | January 1, 1996 |

37.     In signing a Rebate Agreement and becoming a participating Medicaid provider,

Defendants agreed to abide by all laws, regulations and procedures applicable to Medicaid,

including those governing reimbursement. A copy of the form Medicaid Drug Rebate

Agreement, to which all Defendants are subject, is attached as **Exhibit B**.

38.     The Rebate Agreement requires manufacturers to provide CMS with a list of all

their Covered Outpatient Drugs, identified by NDC number, as well as other information, in

accordance with CMS's specifications. Exhibit B, at II(a). This list must be updated quarterly in

Form CMS 367 (the "Quarterly Report").

39.     In the Quarterly Report, manufacturers must submit the following information

relevant to this lawsuit with respect to each Covered Outpatient Drug: NDC; product name; FDA

approval date; the date the drug entered the market; whether it is available by prescription or

over-the-counter (OTC); and its Drug Efficacy Study Implementation (DESI) rating.

40.     To assist manufacturers in submitting accurate information describing their drugs,

CMS periodically issues Medicaid Drug Rebate Program Releases to manufacturers which

contain additional information and instructions regarding the submission of drug data, including

instructions for products which are not Medicaid eligible.

41.     The Rebate Agreement explicitly states that only Covered Outpatient Drugs as

defined in the statute are eligible. None of the products identified in this Complaint meet the

definition of Covered Outpatient Drug, yet Defendants falsely represented them as such.

14

42.     Initially, and each quarter thereafter, Manufacturers thus expressly represent to CMS that each "drug" they designate as a Covered Outpatient Drug meets the statutory definition of such, and is therefore eligible for the Rebate Program.

## V.   How Defendants' False Submissions Corrupted The Covered Outpatient Drug Database And Caused The Submission Of False Claims

43.     CMS compiles and maintains a database containing all the "Covered Outpatient Drugs" – the drugs that are eligible for Medicaid reimbursement from the federal Government. This database is  the previously mentioned Medicaid Drug Product Rebate Initiative ("MDRI") List.

44.     More than 500 drug manufacturers submit lists of their Covered Outpatient Drugs and other required information to CMS, updating this information each quarter. All but those manufacturers with very small product lines make these submissions electronically.

45.     In compiling and maintaining the MDRI List, CMS relies upon and incorporates in the List the products each manufacturer identifies as "Covered Outpatient Drugs" in the manufacturer's original Drug Rebate Agreement and Quarterly Report updates. Hence, the MDRI List is a list of all the drugs that manufacturers have submitted to CMS and represented to be Covered Outpatient Drugs.

46.     CMS sends the MDRI List to the states each quarter in electronic form.

47.     CMS directs the states to use the MDRI List to verify coverage of the drugs for which they claim FFP reimbursement and to calculate the rebates that the manufacturers owe.

48.     State Medicaid programs accordingly determine whether a given product is a "Covered Outpatient Drug" and therefore eligible for FFP under the Medicaid Drug Rebate program solely by reference to the MDRI List.

15

49.     Despite their statutory obligation to truthfully report Covered Outpatient Drugs to CMS, when the Defendants submitted their Rebate Agreements on the dates identified above in paragraph 38 and in Quarterly Reports submitted each quarter thereafter, they listed false FDA approval dates and false DESI status for their Illegal Drugs; and false FDA approval dates and rogue NDC numbers for their Non-Drugs. This false information made their ineligible products appear to be Covered Outpatient Drugs.

50.     CMS relied on Defendants' misrepresentations when it compiled the MDRI List and unwittingly included the ineligible products on the MDRI List it sent to the states, along with the false information reported by the Defendants. The states, in turn, relied on the MDRI List in unwittingly paying claims for these ineligible products and in submitting reimbursement claims to CMS for those same products.  CMS similarly relied on the MDRI List when it paid the states' claims.

**A. False Claims Submitted For Unapproved Drugs, Under The Guise Of Their Being Covered Outpatient Drug Products**

51.     From 1996 to date, the Defendants knowingly made, used, or caused to be made or used false records or statements, submitted to CMS, which were material to a false or fraudulent claim; knowingly caused false claims to be submitted for payment or approval; and, as a direct result of Defendants falsely representing in their Drug Rebate Agreements and Quarterly Reports that the products identified below were Covered Outpatient Drugs, caused the states and CMS to pay false claims for these ineligible products. Had the Defendants truthfully reported these products, CMS would not have placed them on the MDRI List, and Medicaid payments for these products would not have been made.

52.     The following paragraphs describe three categories of Illegal Drugs billed to and paid for by Medicaid as a result of the conduct described herein: (1) Unapproved "New Drugs";

16

(2) DESI LTE's; and (3) Levothyroxine products. These categories are not mutually exclusive. In fact, often an Illegal Drug will fit into more than one category, and will be excluded from Medicaid eligibility for more than one reason. Although described separately, all have in common that they are not Covered Outpatient Drugs, despite being passed off as such by the Defendants. This deception is the fundamental basis of liability for all of the Defendants' products, no matter what category they occupy.

53.     All monetary figures set out below represent approximate sales under the Medicaid program for only the years indicated, and therefore do not reflect the total amount of damages sustained by the United States, or all of the Illegal Drugs for which Medicaid paid reimbursement.

### 1. Unapproved New Drugs

54.     The following drugs are New Drugs within the meaning of the Food, Drug & Cosmetic Act, are not FDA approved, and therefore do not meet the definition of a Covered Outpatient Drug.

### *a. Carbinoxamine*

55.     On June 9, 2006, the FDA gave notice that it was taking enforcement action to stop the manufacture and sale of unapproved carbinoxamine products because of serious safety concerns. 71 Fed. Reg. 33462. The FDA explained that drug products containing carbinoxamine, which is an antihistamine, were determined through the DESI Review process in 1973 to be New Drugs that require approved applications. *Id. See* DESI 6303 (38 Fed. Reg. 7265, March 19, 1973), and DESI 6514, 47 Fed. Reg. 11973, March 19, 1982, reiterating this status).

56.     Since 1985, there have been only two FDA approved carbinoxamine products,

both approved in 2003. However, as the FDA noted, numerous unapproved drugs containing

carbinoxamine have been and are being marketed without FDA approval. 71 Fed. Reg. at 33463.

57.     For example, in the CMS June 25, 2008 and October 16, 2008 Memos to the State

Medicaid Drug Program Drug Rebate Technical Contacts, attached hereto as composite **Exhibit

C,** CMS identified multiple identical carbinoxamine products as not meeting the definition of

Covered Outpatient Drugs.

58.     The sale of unapproved carbinoxamine is particularly disturbing because some

carbinoxamine products were marketed for use by young children and infants. The FDA stated

that it was "aware of 21 deaths since 1983 in children under 2 years of age associated with

carbinoxamine-containing products" and that "the agency is especially concerned about those

unapproved CM [carbinoxamine] products that are being promoted for and may be associated

with serious and life-threatening adverse outcomes in this vulnerable age group." *Id.*

59.     The following drug products contain carbinoxamine and are not approved by the

FDA. As a result, they do not meet the definition of Covered Outpatient Drug.

60.     The NDC numbers, partial, representative amounts paid by Medicaid and false

FDA approval dates are as follows:

(a)

| Defendant Cypress | | Product Cydec Drops and Cydec Syrup – CBM/BF/*DM* |
|---|---|---|
| **NDC** | **False FDA Approval Date** | **Amount Paid (96-02)** |
| 60258 0439 | 09/30/1990 | $1,642,255.00 |
| 60258 0438 | 09/30/1990 | $321,713.00 |
| | **TOTAL:** | **$1,963,968.00** |

(b)

| Defendant Cypress | Formulation | | Product Andehist DM – CBM/DM/PSE |
|---|---|---|---|
| **NDC** | | **False FDA Approval Date** | **Amount Paid (96-02)** |
| 60258 0435 | (Andehist NR Liquid) (CBM1mg; PSE 15mg) | 6/30/90 | $2,471,783.00 |
| 60258 0437 | (Andehist Liquid) (CBM 2mg/mL; PSE 15mg/mL) | 9/30/90 | $574,347.00 |
| 60258 0443 | (Andehist DM Liquid) (CBM 2mg/mL; DM 4mg/mL; PSE 15mg/mL) | 9/30/90 | $1,722,084.00 |
| 60258 0445 | (Andehist DM NR Oral Drops) (CBM 1mg/mL; DM 4mg/mL; PSE 15mg/mL) | 6/30/90 | $5,964,227.00 |
| | | **TOTAL:** | **$10,732,441.00** |

(c)

| Defendant Cypress | Product Carboxine PSE– CBM/PSE | |
|---|---|---|
| **NDC** | **False FDA Approval Date** | **Amount Paid (03-06)** |
| 60258 0439 | 06/30/1990 | $1,125,698.00 |
| | **TOTAL:** | **$1,125,698.00** |

(d)

| Defendant Biovail | Formulation | Product Rondec DM Drops Oral – Carbinox/PSE/DM – Rondec Oral Drops – CBM, PSE | |
|---|---|---|---|
| **NDC** | | **False FDA Approval Date** | **Amount Paid (Thru 03)** |
| 64455 0050 | (Rondec DM) | 09/01/70 | $5,239,404.00 |
| 64455 0051 | (Rondec DM) | 09/01/70 | $5,360,254.00 |
| 64455 0024 | (Rondec DM) | 09/01/70 | $137,244.00 |
| 64455 0071 | (Rondec DM) | 09/01/70 | $4,162,411.00 |
| 64455 0070 | (Rondec DM) | 09/01/70 | $4,508,418.00 |
| 64455 0080 | (Rondec Oral Drops) | 07/01/68 | $1,474,594.00 |
| | | **TOTAL:** | **$20,882,325.00** |

19

(e)

| Defendant Goldline | | Product Cardec DM – Carbinoxamine and/or Bromphen, PSE, DM |
|---|---|---|
| **NDC** | **False FDA Approval Date** | **Amount Paid (96-02)** |
| 00182 6171 | 09/18/80 | $502,270.00 |
| | **TOTAL:** | **$502,270.00** |

(f)

| Defendant Actavis | Formulation | Product Cardec DM and Cardec DM Syrup – Carbinox/PSE/DM |
|---|---|---|
| **NDC** | **False FDA Approval Date** | **Amount Paid (96-04)** |
| 00472 0733 | (Cardec DM Drops) | 1/15/86 | $9,358,618.00 |
| 00472 0731 | (Cardec DM Syrup) | 1/02/86 | $12,177,736.00 |
| | | **TOTAL:** | **$21,536,354.00** |

(g)

| Defendant Actavis | | Product Cardec-S Syrup Carbinoxamine/PSE |
|---|---|---|
| **NDC** | **False FDA Approval Date** | **Amount Paid (2003-2007)** |
| 00472 0727 | 10/21/86 | $3,116,811.00 |
| | **TOTAL:** | **$3,116,811.00** |

(h)

| Defendant Qualitest | | Product Cardec Liquid – carbinoxamine mal/pse and Cardec DM – carbinoxamine mal/dextromethorphan hydrobromide |
|---|---|---|
| **NDC** | **False FDA Approval Date** | **Amount Paid (03-07)** |
| 00603 1062 | 10/01/01 | $1,712,352.00 |
| 00603 1064 | 10/01/01 | $5,331,292.00 |
| | **TOTAL:** | **$7,043,644.00** |

20

(i)

| Defendant Hi-Tech | | Product Carbofed DM – carbinoxamine maleate/dextromethorphan bydromide liquid |
|---|---|---|
| **NDC** | **False FDA Approval Date** | **Amount Paid (2003-2006)** |
| 50383 0576 | 12/20/01 | $3,116,811.00 |
| | **TOTAL:** | **$3,116,811.00** |

(j)

| Defendant Hi-Tech | Formulation | | Product Carbofed DM – CBM/DM/PSE |
|---|---|---|---|
| **NDC** | | **False FDA Approval Date** | **Amount Paid (96-02)** |
| 50383 0571 | (Carbofed DM Syrup) | 9/01/01 | $576,010.00 |
| 50383 0572 | (Carbofed DM Oral Drops) | 9/01/01 | $483,928.00 |
| 50383 0575 | (Carbofed DM Syrup) | 12/20/01 | $3,670,561.00 |
| 50383 0750 | (Carbofed DM Oral Drops Sugar Free) | 10/01/90 | $1,249,169.00 |
| 50383 0751 | (Carbofed DM Syrup Sugar Free) | 10/01/90 | $1,202,125.00 |
| | | **TOTAL:** | **$7,181,793.00** |

(k)

| Defendant Rugby | | Product Carbodec DM – Carbinox/PSE/DM |
|---|---|---|
| **NDC** | **False FDA Approval Date** | **Amount Paid (96-02)** |
| 00536 0439 | None | $547,191.00 |
| 00536 0440 | None | $189,801.00 |
| 00536 0454 | None | $377,382.00 |
| 00536 0456 | None | $365,202.00 |
| 00536 0452 | None | $130,441.00 |
| | **TOTAL:** | **$1,610,017.00** |

21

(l)

| Defendant Major | | | Product Rondamine DM Drops Liquid and Syrup – Carbinoxamine, PSE, DM |
|---|---|---|---|
| **NDC** | **False FDA Approval Date** | **DESI Notice(s)** | **Amount Paid (96-02)** |
| 00904 0702 | 09/30/90 | 47 Fed. Reg. 22606 | $220,377.00 |
| 00904 0703 | 09/30/90 | | $168,361.00 |
| | | **TOTAL:** | **$388,738.00** |

(m)

| Defendant Sciele | | Product Tanafed DM – CPM/DEX/PSE Suspension |
|---|---|---|
| **NDC** | **False FDA Approval Date** | **Amount Paid (96-02)** |
| 59630 0125 | 08/01/93 | $3,023,640.00 |
| | **TOTAL:** | **$3,023,640.00** |

(n)

| Defendant Watson | | Product Histex PD Liquid – Carbinoxamine Maleate |
|---|---|---|
| **NDC** | **False FDA Approval Date** | **Amount Paid (1997-2007)** |
| 62022 0257 | 11/27/01 | $8,758,151.00 |
| 62022 0254 | 11/27/01 | $3,540,314.00 |
| | **TOTAL:** | **$12,298,495.00** |

(o)

| Defendant Watson | | Product Histex HC Liquid – Carbinoxamine Maleate/ Hydrocodone/PSE |
|---|---|---|
| **NDC** | **False FDA Approval Date** | **Amount Paid (1997-2007)** |
| 62022 0901 | 01/01/97 | $1,783,917.00 |
| | **TOTAL:** | **$1,783,917.00** |

(p)

| Defendant Cypress | Formulation | | | Product Cordron 12 – CBM/DM/PSE |
|---|---|---|---|---|
| **NDC** | | | **False FDA Approval Date** | **Amount Paid (2003-2006)** |
| 60258 0419 | (Cordron 12 DM) (cbm tan;dm tan; pse tan) | | 6/30/90 | $334,274.00 |
| 60258 0421 | (Cordron D NR) (cbm; pse) | | 9/30/90 | $615,739.00 |
| 60258 0422 | (Cordron DM NR) (cbm tan;dm tan; pse tan) | | 9/30/90 | $409,079.00 |
| | | | **TOTAL:** | **$1,359,092.00** |

#### b. Extended Release Products

61.     Since 1959, the FDA has deemed all drugs in timed-release/extended release dosage forms to be New Drugs which are therefore required to obtain FDA approval. 24 Fed. Reg. 3756 (May 9, 1959). According to the FDA, "review of individual applications is needed to ensure that the finished product releases its active ingredients at a rate that is both safe, without "dumping" of the dose, and effective, sustaining the intended effect over the entire period during which the therapeutic benefit is claimed …. The agency's determination that all products in timed-release form are New Drugs requiring approved applications has been codified since 1959 in 21 CFR 310.502(a)(14)." 72 Fed. Reg. 29517.

62.     Timed-release drugs that have been sold without FDA approval have been targeted for enforcement by the FDA.

63.     Many of the products described in this section are timed-release drug products containing guaifenesin, which is used to treat colds and coughs. These products were subject to a May 29, 2007 notification by the FDA of its intention to take enforcement action against unapproved drug products in timed-release dosage forms containing guaifenesin. 72 Fed. Reg. 29517.

23

64.     CMS has reiterated that timed-release products are not Covered Outpatient Drugs
unless they have received FDA approval, citing 21 CFR 310.502(a)(14). *See, e.g.*, letters from
CMS Rebate Program dated April 8, 2008, April 10, 2008 and August 14, 2008 attached as
composite **Exhibit D**.

65.     The following extended release drug products do not meet the definition of a
Covered Outpatient Drug for multiple reasons, including that they are timed-release drugs, yet
they were paid for by Medicaid as a result of the Defendants' false representations.

66.     The NDC numbers, partial, representative amounts paid by Medicaid and false
FDA approval dates are as follows:

(a)

| Defendant Ferndale | | Product Kronofed-A Capsules Chlorpheniramine Maleate 8mg and Pseudoephedrine Hydrochloride 120mg |
|---|---|---|
| **NDC** | **False FDA Approval Date** | **Amount Paid (96-04)** |
| 0496 0382 | 9/30/90 | $94,569.00 |
| 0496 0434 | 9/30/90 | $164,157.00 |
| | **TOTAL:** | **$258,726.00** |

(b)

| Defendant Sciele | | Product Defen LA - guaifenesin and pseudoephedrine Hcl |
|---|---|---|
| **NDC** | **False FDA Approval Date** | **Amount Paid (96-03)** |
| 59630 0110 | 2/1/93 | $285,971.00 |
| | **TOTAL:** | **$285,971.00** |

(c)

| Defendant Sciele | | Product Mescolor Tablets Chlorpheniramine Maleate 8mg; Pseudoephedrine 120mg; Methscopolamine Nitrate 2.5mg |
|---|---|---|
| NDC | False FDA Approval Date | Amount Paid (96-04) |
| 59630 0150 | 12/01/94 | $739,844.00 |
| | TOTAL: | $739,844.00 |

(d)

| Defendant Sciele | | Product Tannafed DP Extended Release – Dexchlorpheniramine Tannate, Pseudoephedrine Tannate |
|---|---|---|
| NDC | False FDA Approval Date | Amount Paid (96-03) |
| 59630 0465 | 8/01/02 | $3,287,839.00 |
| | TOTAL: | $3,287,839.00 |

(e)

| Defendant Sciele | | Product Tanafed DMX – Suspension, extended release dexchlorpheniramine tannate, dextromethorphan tannate |
|---|---|---|
| NDC | False FDA Approval Date | Amount Paid (96-02) |
| 59630 0470 | 9/01/02 | $6,263,283.00 |
| | TOTAL: | $6,263,283.00 |

(f)

| Defendant Sciele | | Product Protuss DM Ext. Rel. -Guaifenesin 600mg; Pseudoephedrine Hydrochloride 60 mg; Dextromethorphan Hydrobromide 30mg |
|---|---|---|
| NDC | False FDA Approval Date | Amount Paid (96-04) |
| 59630 0160 | 2/28/97 | $1,302,581.00 |
| | TOTAL: | $1,302,581.00 |

25

(g)

| Defendant Qualitest | | Product De-Congestine chlorpheniramine maleate and pseudoephedrine HCI |
|---|---|---|
| **NDC** | **False FDA Approval Date** | **Amount Paid (96-03)** |
| 0603 3143 | 10/1/91 | $637,740.00 |
| | **TOTAL:** | **$637,740.00** |

(h)

| Defendant Goldline | | Product Q-Bid LA 250 |
|---|---|---|
| **NDC** | **False FDA Approval Date** | **Amount Paid (2003)** |
| 00182 1042 | 1/1/00 | $1,532,208.00 |
| | **TOTAL:** | **$1,532,208.00** |

(i)

| Defendant Goldline | | Product Guaifenesin ER Tablets – extended release single-ingredient guaifenesin |
|---|---|---|
| **NDC** | **False FDA Approval Date** | **Amount Paid (96-04)** |
| 00182 1188 | 01/01/00 | $786,074.00 |
| | **TOTAL:** | **$786,074.00** |

(j)

| Defendant United Research | | Product Guaifenesin, Pseudoephedrine |
|---|---|---|
| **NDC** | **False FDA Approval Date** | **Amount Paid (2003)** |
| 00677 1487 | None | $76,277.00 |
| | **TOTAL:** | **$76,277.00** |

(k)

| Defendant United Research | Formulation | | Product Guaifenesin LA, SR, Tablets – Single ingredient Guaifenesin extended release |
|---|---|---|---|
| **NDC** | | **False FDA Approval Date** | **Amount Paid** |
| 00677 1475 | LA | 01/01/93 | $3,009,655.00 |
| 00677 1643 | SR | 06/30/90 | $730,075.00 |
| 00677 1661 | Tablet | 06/30/90 | $182,754.00 |
| | | **TOTAL:** | **$3,922,484.00** |

26

(l)

| Defendant<br>Major | | Product<br>Guaifenesin LA Caplets – Guaifenesin single ingredient<br>extended release |
|---|---|---|
| **NDC** | **False FDA Approval Date** | **Amount Paid (96-04)** |
| 0904 7759 | 04/30/93 | $597,972.00 |
| | **TOTAL:** | **$597,972.00** |

(m)

| Defendant<br>Duramed | | Product<br>Generic Pseudoephedrine HCL, Guaifenesin Extended Release |
|---|---|---|
| **NDC** | **False FDA Approval Date** | **Amount Paid (96-03)** |
| 51285 0401 | 9/30/90 | $1,623,014.00 |
| | **TOTAL:** | **$1,623,014.00** |

(n)

| Defendant<br>Duramed | | Product<br>Generic Phenylpropanolamine,<br>Guaifenesin LA Tablets |
|---|---|---|
| **NDC** | **False FDA Approval Date** | **Amount Paid (96-03)** |
| 51285 0295 | 9/30/90 | $523,973.00 |
| | **TOTAL:** | **$523,973.00** |

(o)

| Defendant<br>Duramed | | Product<br>R-Tanna Suspension – Chlorpheniramine<br>tannate, phenylephrine tannate |
|---|---|---|
| **NDC** | **False FDA Approval Date** | **Amount Paid (96-03)** |
| 51285 0722 | 1/01/01 | $977,728.00 |
| | **TOTAL:** | **$977,728.00** |

(p)

| Defendant<br>Duramed | | Product<br>Guaifenesin Tablets Sustained<br>Release – single ingredient<br>guaifenesin |
|---|---|---|
| **NDC** | **False FDA Approval Date** | **Amount Paid (96-03)** |
| 51285 0417 | 12/29/94 | $5,501,659.00 |
| | **TOTAL:** | **$5,501,659.00** |

27

(q)

| Defendant Duramed | | Product Guaifenesin DM Tablets Sustained Release – single ingredient guaifenesin | |
|---|---|---|---|
| **NDC** | **False FDA Approval Date** | **Amount Paid (96-03)** | |
| 51285 0420 | 11/14/95 | $971,603.00 | |
| | **TOTAL:** | **$971,603.00** | |

(r)

| Defendant Pan American | Formulation | | Product Panmist LA & Jr. – Guaifenesin & Pseudoephedrine |
|---|---|---|---|
| **NDC** | | **False FDA Approval Date** | **Amount Paid (96-03)** |
| 00525 0742 | LA | 01/01/84 | $581,920.00 |
| 00525 0775 | LA | 01/01/84 | $642,912.00 |
| 00525 0776 | LA | None | $19,742.00 |
| 00525 0762 | Jr. | 01/01/84 | $1,075,172.00 |
| | | **TOTAL:** | **$2,319,746.00** |

(s)

| Defendant Pan American | | Product Panmist DM – PSE HC1, Guaif/Dextromethorphan | |
|---|---|---|---|
| **NDC** | **False FDA Approval Date** | **Amount Paid (96-03)** | |
| 00525 0754 | 06/07/96 | $1,027,179.00 | |
| | **TOTAL:** | **$1,027,179.00** | |

(t)

| Defendant Hi-Tech (ECR) | | Product Lodrane LD and Liquid – PSE & Brompheniramine | |
|---|---|---|---|
| **NDC** | **False FDA Approval Date** | **Amount Paid (02-06)** | |
| 00095 6004 | 09/01/94 | $2,353,948.00 | |
| 00095 6006 | 02/08/93 | $683,042.00 | |
| 00095 0645 | 07/01/02 | $2,210,674.00 | |
| 00095 1200 | 11/01/04 | $2,015,565.00 | |
| 00095 1290 | 12/15/06 | 4,674,030.00 | |
| | **TOTAL:** | **$11,937,259.00** | |

28

(u)

| Defendant<br>United Research | | Product<br>Guaifenesin/Pseudoephedrine<br>Extended Release Tablets |
|---|---|---|
| **NDC** | **False FDA Approval Date** | **Amount Paid (03-07)** |
| 00677 1476 | 1/01/93 | $1,330,592.00 |
| 00677 1785 | 9/30/90 | $245,622.00 |
| 00677 1790 | 7/30/90 | $256,310.00 |
| | **TOTAL:** | **$1,832,524.00** |

(v)

| Defendant<br>Hi-Tech | | Product<br>Ry-T-12 – phenylephrine<br>tannate/pyrilamiine tannate |
|---|---|---|
| **NDC** | **False FDA Approval Date** | **Amount Paid (03-07)** |
| 50383 0864 | 10/01/90 | $827,174.00 |
| | **TOTAL:** | **$827,174.00** |

(w)

| Defendant<br>Hi-Tech | | Product<br>Tannate DM Suspension– dm<br>tannate/dexchlorpheniramine tannate/pse<br>tannate |
|---|---|---|
| **NDC** | **False FDA Approval Date** | **Amount Paid (03-06)** |
| 50383 0866 | None | $3,362,071.00 |
| | **TOTAL:** | **$3,362,071.00** |

(x)

| Defendant<br>Cypress | | Product<br>CPM 8/PE 20/ MSC 1.25 Extended Release<br>Tablets |
|---|---|---|
| **NDC** | **False FDA Approval Date** | **Amount Paid (2003-2007)** |
| 60258 0250 | 9/30/90 | $287,710.00 |
| | **TOTAL:** | **$287,710.00** |

(y)

| Defendant Cypress | | Product GFN 1200/DM Extended Release Tablet – dm/gg/phenyleph hcl |
|---|---|---|
| **NDC** | **False FDA Approval Date** | **Amount Paid (2003-2006)** |
| 60258 0252 | 6/30/90 | $234,741.00 |
| | **TOTAL:** | **$234,741.00** |

(z)

| Defendant Cypress | | Product GFN 1200/DM and GFN 1000/DM Extended Release Tablets – dm/gg/ |
|---|---|---|
| **NDC** | **False FDA Approval Date** | **Amount Paid (2003-2006)** |
| 60258 0263 | 6/30/90 | $614,424.00 |
| 60258 0267 | 6/30/90 | $524,852.00 |
| | **TOTAL:** | **$1,139,276.00** |

(aa)

| Defendant Cypress | | Product GFN 600/PSE Extended Release Tablet – dm/gg/pse |
|---|---|---|
| **NDC** | **False FDA Approval Date** | **Amount Paid (2003-2006)** |
| 60258 0264 | 6/30/90 | $189,310.00 |
| | **TOTAL:** | **$189,310.00** |

(bb)

| Defendant Cypress | | Product GFN/PSE 12 Extended Release Tablet – gg/pse |
|---|---|---|
| **NDC** | **False FDA Approval Date** | **Amount Paid (2003-2006)** |
| 60258 0266 | 6/30/90 | $146,671.00 |
| 60258 0275 | 9/30/90 | $238,178.00 |
| | **TOTAL:** | **$384,849.00** |

30

(cc)

| Defendant Cypress | | Product GFN 600/PE 2 Extended Release Tablet – gg/phenylephrine hcl |
|---|---|---|
| **NDC** | **False FDA Approval Date** | **Amount Paid (2003-2006)** |
| 60258 0269 | 6/30/90 | $607,563.00 |
| | **TOTAL:** | **$607,563.00** |

(dd)

| Defendant Cypress | | Product PCM LA Tablets – cpm/methscopolamine nit./pse hcl |
|---|---|---|
| **NDC** | **False FDA Approval Date** | **Amount Paid (2003-2007)** |
| 60258 0280 | 9/30/90 | $274,857.00 |
| | **TOTAL:** | **$274,857.00** |

(ee)

| Defendant Cypress | | Product GFN 800/DM Extended Release Tablets – dm/gg |
|---|---|---|
| **NDC** | **False FDA Approval Date** | **Amount Paid (2003-2006)** |
| 60258 0292 | 9/30/90 | $158,087.00 |
| | **TOTAL:** | **$158,087.00** |

(ff)

| Defendant Cypress | | | Product Chlordex A 12 Extended Release Tablet – cpm/phenylephrine hcl |
|---|---|---|---|
| **NDC** | **False FDA Approval Date** | **DESI Notice(s)** | **Amount Paid (03-07)** |
| 60258-0283 | 9/30/90 | On 8-4-09 CMS DESI LTE List | $709,954.00 |
| 60258-0313 | 9/30/90 | | $791,639.00 |
| | | **TOTAL:** | **$1,501,593.00** |

31

(gg)

| Defendant<br>Cypress | | Product<br>Bellahist D LA -<br>Atropine/Cpm/Hyoscyamine/Pe<br>Scopolamine |
|---|---|---|
| **NDC** | **False FDA Approval<br>Date** | **Amount Paid (03-07)** |
| 60258-0283 | 9/30/90 | $709,954.00 |
| | **TOTAL:** | **$709,954.00** |

(hh)

| | Product |
|---|---|
| Qualitest | Bromuphed Extended Release Capsules–<br>bromopheniramine maleate/pseudoephedrine<br>hcl |
| **NDC** | **False FDA Approval Date** | **Amount Paid (03-07)** |
| 00603 2505 | 7/01/90 | $76,052.00 |
| 00603 2506 | 7/01/90 | $140,919.00 |
| | **TOTAL:** | **$216,971.00** |

(ii)

| Defendant<br>Qualitest | | Product<br>Guaifen-PS – guaifenesin/pseudoephedrine hcl |
|---|---|---|
| **NDC** | **False FDA Approval Date** | **Amount Paid (03-07)** |
| 00603 3767 | 10//01/02 | $1,210,152.00 |
| | **TOTAL:** | **$1,210,152.00** |

(jj)

| Defendant<br>Qualitest | | | Product<br>Hyoscyamine Sulfate Extended<br>Release Capsules and Extended<br>Release Tablets |
|---|---|---|---|
| **NDC** | | **False FDA Approval Date** | **Amount Paid (03-07)** |
| 00603 4004 | Capsules | 7/01/90 | $137,114.00 |
| 00603 4005 | Tablets | 1/01/95 | 128,933.00 |
| | | **TOTAL:** | **$266,047.00** |

32

### c. Hydrocodone Products

67.     Hydrocodone is an opioid derived from codeine.

68.      Hydrocodone is a Schedule II narcotic under the Controlled Substances Act, 21

U.S.C. 801 *et seq.*, and combination products with hydrocodone and non-narcotic active

ingredients, which are labeled either for use as analgesics or for use as antitussives, are Schedule

III narcotics. Hydrocodone is one of the most potent drugs available to relieve pain and treat

cough symptoms.

69.     The FDA determined in 1982 that hydrocodone bitartrate is a New Drug and that

FDA approval was required for marketing. 47 Fed. Reg. 23809 (June 1, 1982). This status is

reiterated in the DESI history recounted at 72 Fed. Reg. 55780 (October 1, 2007).  In CMS's

August 27, 2008 and October 16, 2008 Memos to the State Medicaid Drug Program Drug Rebate

Technical Contacts, other identical hydrocodone products were named as failing to meet the

definition of a Covered Outpatient Drug.

70.     In October 2007, FDA gave notice that it would take enforcement action against

unapproved hydrocodone products and those who manufacture them or cause them to be

manufactured or shipped in interstate commerce. 72 Fed. Reg. 55780.  The FDA stated it "is

taking action at this time against these products because: (1) hydrocodone is a drug with

significant safety risks and (2) there are FDA-approved drug products containing hydrocodone;

thus the continued marketing of unapproved versions is a direct challenge to the drug approval

process." A copy of 72 Fed. Reg. 55780 is attached as **Exhibit E.**

71.     In the Notice, the FDA stated: "Under its DESI review, FDA determined that

hydrocodone bitartrate is a New Drug. Firms must, therefore, have an approved application

before marketing any drug product that contains hydrocodone bitartrate, or any other salt or ester

of hydrocodone (collectively, "hydrocodone")."  The DESI review determination that

hydrocodone is a New Drug was the one made in 1982. 47 Fed. Reg. 23809.

72.     The following drug products have never been FDA-approved. As a result, they do

not meet the definition of a Covered Outpatient Drug. *See, e.g.* CMS's August 27, 2008 and

October 16, 2008 Memos to the State Medicaid Drug Program Drug Rebate Technical contacts,

attached hereto as composite **Exhibit F.**

73.     The NDC numbers, partial, representative amounts paid by Medicaid and false

FDA approval dates are as follows:

(a)

| Defendant Qualitest | | | Product Codituss DH (AF) Syrup – HCD/Phenyleph/PYRIL |
|---|---|---|---|
| **NDC** | **False FDA Approval Date** | **DESI Notice(s)** | **Amount Paid (03 & 06)** |
| 00603 1111 | 10/11/97 | DESI 6514; 47 Fed. Reg. 22609 | $248,978.00 |
| | | **TOTAL:** | **$248,978.00** |

(b)

| Defendant Qualitest | | | Product HC Tussive Syrup – Hydrocodone/Chlorphen/Phenyl |
|---|---|---|---|
| **NDC** | **False FDA Approval Date** | **DESI Notice(s)** | **Amount Paid (2006)** |
| 00603 1284 | 07/01/90 | DESI 6514; 47 Fed. Reg. 22609 | $779,983.00 |
| | | **TOTAL:** | **$779,983.00** |

(c)

| Defendant Qualitest | | Product HC Tussive D Syrup – Hydrocodone/PSE |
|---|---|---|
| **NDC** | **False FDA Approval Date** | **Amount Paid (2006)** |
| 00603 1285 | 10/11/97 | $6,412.00 |
| | **TOTAL:** | **$6,412.00** |

(d)

| Defendant Qualitest | | Product Vi-Q-Tuss – Hydrocodone/PSE |
|---|---|---|
| **NDC** | **False FDA Approval Date** | **Amount Paid (2006)** |
| 00603 1853 | 07/01/90 | $261,646.00 |
| | **TOTAL:** | **$261,646.00** |

(e)

| Defendant Qualitest | Formulation | Product Quendal HD and Plus– CPM/HDC/PHENYLEPH | |
|---|---|---|---|
| **NDC** | | **False FDA Approval Date** | **Amount Paid** |
| 00603 1621 | HD Liquid | 7/01/90 | $1,696,246.00 |
| 00603 1622 | HD Plus Liquid | 7/01/90 | $356,478.00 |
| | | **TOTAL:** | **$2,052,724.00** |

(f)

| Defendant Qualitest | | Product Quintex Liquid | |
|---|---|---|---|
| **NDC** | **False FDA Approval Date** | **DESI Notice(s)** | **Amount Paid (02-06)** |
| 00603 1635 | 07/01/02 | 48 Fed. Reg. 5685447 | $454,219.00 |
| | | **TOTAL:** | **$454,219.00** |

(g)

| Defendant Duramed | | Product Duradal HD Liquid – Chlorpheniramine, hydrocodone, phenylephrine |
|---|---|---|
| **NDC** | **False FDA Approval Date** | **Amount Paid (02-06)** |
| 51285 0726 | 11/01/96 | $501,510.00 |
| | **TOTAL:** | **$501,510.00** |

35

(h)

| Defendant Pan American | Formulation | | | Product Pancof XP – Guaifenesin & Hydrocodone |
|---|---|---|---|---|
| NDC | | False FDA Approval Date | DESI Notice(s) | Amount Paid (96-03) |
| 00525 9611 | Coditrate | 10/08/87 | 47 Fed. Reg. 11973 | $802,966.00 |
| 00525 9758 | | 10/08/96 | | $1,104,178.00 |
| 00525 0711 | | None | | $125,319.00 |
| | | | TOTAL: | $2,032,463.00 |

(i)

| Defendant Watson | | Product Histex HC Liquid – Carbinoxamine Maleate/Hydrocodone/PSE |
|---|---|---|
| NDC | False FDA Approval Date | Amount Paid (1997-2007) |
| 62022 0901 | 01/01/97 | $1,783,917.00 |
| | TOTAL: | $1,783,917.00 |

(j)

| Defendant Cypress | | Product Hydro-PC II – chlorpheniramine maleate/hydrocodone bitartrate/phenyleph hcl |
|---|---|---|
| NDC | False FDA Approval Date | Amount Paid (2003-2007) |
| 60258 0701 | 6/30/90 | $1,973,852.00 |
| | TOTAL: | $1,973,852.00 |

(k)

| Defendant Cypress | | Product Cytuss HC – chlorpheniramine maleate/hydrocodone bitartrate/phenyleph hcl |
|---|---|---|
| NDC | False FDA Approval Date | Amount Paid (2003-2007) |
| 60258 0704 | 9/30/90 | $258,244.00 |
| | TOTAL: | $258,244.00 |

36

(l)

| Defendant Qualitest | | Product Vi-Q-Tuss – guaifenesin/hydrocodone bitartrate |
|---|---|---|
| **NDC** | **False FDA Approval Date** | **Amount Paid (03-07)** |
| 00603 1853 | 7/01/90 | $1,726,664.00 |
| | **TOTAL:** | **$1,726,664.00** |

(m)

| Defendant Qualitest | | Product Q-V Tussin – chlorpheniramine maleate/hydrocodone bitartrate/pse hcl |
|---|---|---|
| **NDC** | **False FDA Approval Date** | **Amount Paid (03-07)** |
| 00603 1609 | 1/01/92 | $162,871.00 |
| | **TOTAL:** | **$162,871.00** |

(n)

| Defendant Cypress | | Product Hydron PSC – chlorpheniramine maleate/hydrocodone bitartrate/pse |
|---|---|---|
| **NDC** | **False FDA Approval Date** | **Amount Paid (2003-2007)** |
| 60258 0708 | 9/30/90 | $196,219.00 |
| | **TOTAL:** | **$196,219.00** |

(o)

| Defendant Cypress | | Product Hydron CP CIII – chlorpheniramine maleate/hydrocodone bitartrate/phenyleph |
|---|---|---|
| **NDC** | **False FDA Approval Date** | **Amount Paid (2003-2007)** |
| 60258 0714 | 9/30/90 | $665,969.00 |
| | **TOTAL:** | **$665,969.00** |

(p)

| Defendant Cypress | | Product Hydro DP CIII – diphenhydramine hcl/hydrocodone bitartrate/phenyleph hcl |
|---|---|---|
| **NDC** | **False FDA Approval Date** | **Amount Paid (2003-2007)** |
| 60258 0709 | 9/30/90 | $1,735,237.00 |
| | **TOTAL:** | **$1,735,237.00** |

(q)

| Defendant Cypress | | Product Hydro GP – guaifenesin/hydrocodone bitartrate/phenylephrin hydrochloride/ |
|---|---|---|
| **NDC** | **False FDA Approval Date** | **Amount Paid (2003-2007)** |
| 60258 0782 | 9/30/90 | $92,151.00 |
| | **TOTAL:** | **$92,151.00** |

(r)

| Defendant Cypress | | Product Hyphed – chlorpheniramine mal./hydrocodoone bit./pse hcl |
|---|---|---|
| **NDC** | **False FDA Approval Date** | **Amount Paid (2003-2007)** |
| 60258 0790 | 9/30/90 | $162,742.00 |
| | **TOTAL:** | **$162,742.00** |

(s)

| Defendant Cypress | | Product De-Chlor HC – chlorpheniramine maleate/hydrocodone bitartrate/phenyleph hcl |
|---|---|---|
| **NDC** | **False FDA Approval Date** | **Amount Paid (2003-2007)** |
| 60258 0710 | 9/30/90 | $1,288,768.00 |
| | | **$1,288,768.00** |

(t)

| Defendant Cypress | | Product De-Chlor MR – hydrocodone bitartrate/phenylephrin hydrochloride/pyril mal |
|---|---|---|
| **NDC** | **False FDA Approval Date** | **Amount Paid (2003-2007)** |
| 60258 0775 | 9/30/90 | $354,600.00 |
| | **TOTAL:** | **$354,600.00** |

(u)

| Defendant Cypress | | Product Su-Tuss HD – gg/hydrocodone bit./phenyleph hcl |
|---|---|---|
| **NDC** | **False FDA Approval Date** | **Amount Paid (2003-2007)** |
| 60258 0715 | 9/30/90 | $261,039.00 |
| | **TOTAL:** | **$261,039.00** |

(v)

| Defendant Cypress | | Product APAP/Hydrocodone – acetaminophen/hydrocodone bitartrate |
|---|---|---|
| **NDC** | **False FDA Approval Date** | **Amount Paid (2003-2007)** |
| 60258 0720 | 9/30/90 | $1,370,434.00 |
| | **TOTAL:** | **$1,370,434.00** |

(w)

| Defendant Cypress | | Product Codal DH – hydrocodone bitartrate/phenylephrin hydrochloride/pyril |
|---|---|---|
| **NDC** | **False FDA Approval Date** | **Amount Paid (2003-2007)** |
| 60258 0770 | 9/30/90 | $731,465.00 |
| | **TOTAL:** | **$731,465.00** |

(x)

| Defendant Actavis | | Product Hydromet Syrup – homatropine methylbromide/hydrocodone bitartrate |
|---|---|---|
| **NDC** | **False FDA Approval Date** | **Amount Paid (2003-2007)** |
| 00472 1030 | 7/05/08 | $816,380.00 |
| | **TOTAL:** | **$816,380.00** |

(y)

| Defendant Watson | | Product Histex SR Extended Release – Brompheniramine Maleate/Pseudoephedrine hcl |
|---|---|---|
| **NDC** | **False FDA Approval Date** | **Amount Paid (97-02)** |
| 62022 0088 | None | $634,217.00 |
| 62022 0089 | None | $583,769.00 |
| | **TOTAL:** | **$1,217,986.00** |

(z)

| Defendant | Formulation | | Product |
| --- | --- | --- | --- |
| Hawthorn | | | Dytan CS Suspension and Extended Release Tablet – Carbetapentane tannate/phenylephrine tannate/diphenhydramine tannate |
| **NDC** | | **False FDA Approval Date** | **Amount Paid (2003 - 3rd qtr 2008)** |
| 63717 0580 | Suspension | 9/30/90 | $3,430,376.00 |
| 63717 0581 | TER | 6/30/90 | $1,965,638.00 |
| | | **TOTAL:** | **$5,396,014.00** |

(aa)

| Defendant | Product |
| --- | --- |
| Hi-Tech (ECR) | Lodrane 12 Hour – brompheniramine maleate extended release |
| **NDC** | **False FDA Approval Date** | **Amount Paid (2003 - 3rd qtr 2008)** |
| 00095 0006 | 7/01/01 | $858,983.00 |
| | **TOTAL:** | **$858,983.00** |

### d. Other Unapproved New Drugs That Do Not Meet The Definition Of A Covered Outpatient Drug

74.    Some unapproved drugs were first marketed, or were changed in formulation, dosage strength, labeling or otherwise, after October 10, 1962, the date on which the 1962 FDCA amendments became effective. These products are deemed New Drugs, which must be approved for safety and effectiveness in order to be legally sold.

75.    FDA has unequivocally stated that "unapproved drugs which were first marketed (or changed) after 1962 … are on the market illegally. Some also may have already been the subject of a formal Agency finding that they are new drugs. *See, e.g.,* See 21 CFR 310,502 (discussing, among other things, controlled/timed release dosage forms)." *Final Compliance Guide,* at 10.

40

76.    The following products were either first sold after October 10, 1962, or changed the product label, strength, formulation or dosage after that date and as such are unapproved New Drugs, yet they were paid for by Medicaid as a result of the Defendants' false representations that they were Covered Outpatient Drugs.

77.    The NDC numbers, partial, representative amounts paid by Medicaid and false FDA approval dates are as follows:

(a)

| Defendant Healthpoint | *Post 62 New Technology* | Product Panafil 40 – chlorophyllin copper complex/papain/urea |
|---|---|---|
| **NDC** | **False FDA Approval Date** | **Amount Paid (2003-2006)** |
| 00064 3410  Panafil 40 | 12/31/99 | $32,179,257.00 |
| 00064 3510  Panafil SE | 12/21/03 | 4,024,126.00 |
| | **TOTAL:** | **$36,203,383.00** |

(b)

| Healthpoint | *Post 62 New Technology* | Product Accuzyme – papain/urea SPR, TP (debriding) |
|---|---|---|
| **NDC** | **False FDA Approval Date** | **Amount Paid (03-06)** |
| 00064 1001 | 6/21/04 | $580,883.00 |
| | **TOTAL:** | **$580,883.00** |

## 2. DESI Less Than Effective Drugs

78.    DESI drugs are limited to those that came on the market between 1938 and 1962 with an approved NDA, as well as all drugs identical, related or similar ("IRS") to them. 21

C.F.R. § 310.6(b)(1). DESI drugs are those drugs described in Section 107(c)(3) of the Drug

Amendments of 1962.

79.     If the DESI review described in ¶32 and ¶33 resulted in an FDA conclusion that

there was a lack of substantial evidence of a drug's effectiveness for *all* of its labeled indications,

and the manufacturer was unable to subsequently obtain FDA approval of a New Drug

Application establishing the drug's safety and effectiveness for those indications, the drug is

ineligible for Medicaid, unless "the secretary [of HHS] has determined there is a compelling

justification for its medical need…" 42 U.S.C. § 1396r-8(k)(2)(A)(iii). None of the Defendants'

products below are the subject of such an HHS determination.

80.     Manufacturers must provide CMS with the proper code to identify their DESI-

LTE drugs in their Quarterly Reports. The applicable DESI codes are as follows:

> 2 = Safe and effective or non-DESI drug;
> 3 = Drug under review (no Notice of Opportunity for Hearing [NOOH] issued);
> 4 = LTE/IRS drug for some indications;
> 5 = LTE/IRS drug for all indications;
> 6 = LTE/IRS drug withdrawn from market.

Code 5 is required to be inserted for all DESI-LTE's for all indications, Code 6 for those

withdrawn from sale.

81.     If a manufacturer enters Code 5 or 6 for a drug, CMS disqualifies that drug from

the MDRI List and the product is categorically ineligible for Medicaid. Federal law enacted well

before the Medicaid Rebate Program was established in 1990 expressly precludes payment for

such DESI-LTE drugs (42 U.S.C. § 1396b (i)(5); 42 U.S.C. § 1395y(c); 42 C.F.R. §441.25) and

the definition of Covered Outpatient Drug in the Medicaid Rebate Program legislation, 42 U.S.C.

§ 1396r-8(k)(2)(A)(iii), expressly excludes such drugs.

82.     Manufacturers are responsible for truthfully reporting their products' FDA, LTE, or IRS classifications to CMS, subject to civil penalties of up to $100,000 per item of false information knowingly provided to CMS. *See CMS Medicaid Drug Rebate Program Release No. 12 To Drug Manufacturers.*

83.     The Defendants identified below submitted false records or statements to CMS, caused the submission of false claims and also caused false claims to be paid or approved for the DESI-LTE products identified below. Had the DESI-LTE drugs been reported by these Defendants truthfully as category 5 DESI drugs, they would not have been placed on the MDRI List, and their ineligibility for Medicaid reimbursement would have been disclosed by their Code 5 designation.

84.     The Defendants' submissions included a false representation that the drug met the definition of a Covered Outpatient Drug, a false DESI status of "2" ("safe and effective") or "3" ("drug under review (no NOOH issued)") for products which are DESI 5 ("DESI-LTE"), and in many instances a false FDA approval date.

### a. *Nitroglycerin Transdermal*

85.     The FDA declared nitroglycerin in a transdermal delivery system form a "New Drug" on July 15, 1993 in a Federal Register Notice. *See* 58 Fed. Reg. 38129.  The Notice required manufacturers of conditionally approved nitroglycerin transdermal products to submit additional information regarding their drugs' composition, bioavailability and other matters, in order to continue marketing the drugs. The 1993 Notice, expressly applied to IRS drugs.

86.     On March 25, 1999, the FDA issued a NOOH (hereinafter "March 1999 NOOH"), proposing to withdraw approval of the nitroglycerin transdermal drug products listed in the NOOH, on the grounds that they lacked substantial evidence of effectiveness for all indications,

43

because the sponsors of the products had not submitted any bioavailability/bioequivalence or other required data. 64 Fed. Reg. 14451. This Notice expressly applied to all IRS drugs as well. *Id.* The Notice also applied to all other manufacturers or distributors of nitroglycerin transdermal products which were not the subject of an approved application.

87.    The following Defendants ignored the March 1999 NOOH and continued to market their products without FDA approval, and despite FDA's finding that their drugs were ineffective.

88.    The unapproved nitroglycerin transdermal products paid for by Medicaid along with their NDCs, and partial representative amounts paid are as follows.  None of these products were approved by the FDA after the 1993 Notice.

(a)

| Defendant Major | | Product NitroTransderm |
|---|---|---|
| **NDC** | **False FDA Approval Date** | **Amount Paid (96-03)** |
| 00904 0653 | 09/30/90 | $698,345.00 |
| 00904 0652 | 09/30/90 | $728,768.00 |
| | **TOTAL:** | **$1,427,113.00** |

(b)

| Defendant Warner | | Product NitroTransderm |
|---|---|---|
| **NDC** | **False FDA Approval Date** | **Amount Paid (96-03)** |
| 00047 0835 | 09/01/90 | $4,836,471.00 |
| 00047 0837 | 09/01/90 | $4,238,043.00 |
| 00047 0839 | 09/01/90 | $715,068.00 |
| (Transderm Nitro .6 mg) | | |
| | **TOTAL:** | **$9,789,582.00** |

(c)

| Defendant Qualitest | | Product NitroTransderm |
| --- | --- | --- |
| **NDC** | **False FDA Approval Date** | **Amount Paid (96-03)** |
| 00603 4725 | 07/01/90 | $782,762.00 |
| 00603 4726 | 07/01/90 | $733,167.00 |
| 00603 4727 | None | $84,932.00 |
| | **TOTAL:** | **$1,600,861.00** |

(d)

| Defendant Goldline | | Product NitroTransderm |
| --- | --- | --- |
| **NDC** | **False FDA Approval Date** | **Amount Paid (96-03)** |
| 00182 1240 | 06/09/86 | $761,700.00 |
| 00182 1267 | 08/01/87 | $724,930.00 |
| | **TOTAL:** | **$1,486,630.00** |

(e)

| Defendant Shire | | Product NitroTransderm |
| --- | --- | --- |
| **NDC** | **False FDA Approval Date** | **Amount Paid (96-03)** |
| 54092 0343 | None | $1,399,317.00 |
| 54092 0342 | None | $368,404.00 |
| 54092 0344 | None | $316,492.00 |
| | **TOTAL:** | **$2,084,213.00** |

### b. Oral Nitroglycerin (Controlled Release)

89.     On September 7, 1984, the FDA issued a Notice (hereinafter "the 1984 Notice")
declaring that any "drug product that contains oral nitroglycerin (controlled-release) is a 'New
Drug', and setting conditions for the marketing of such products. 49 Fed. Reg. 35428. The 1984
Notice required that manufacturers with previously approved applications submit supplements
containing additional information about their products, including bioavailability, in order to
obtain approval on the basis of safety *and* effectiveness. The manufacturers were given one year

45

to do so, a deadline which was later extended to June, 1989. The Notice informed manufacturers

that marketing these products without providing the required information would subject them to

FDA enforcement.

90.     On April 20, 1999, the FDA issued a second Notice ("April 1999 Notice"),

declaring that certain sponsors of oral nitroglycerin products had not complied with the 1984

Notice, because "they either have not submitted any bioavailability/bioequivalence data or have

not submitted additional data on incomplete or inadequate studies." 64 Fed. Reg. 19373. The

FDA therefore proposed to withdraw approval of their applications and declared that the

products lacked evidence of effectiveness. *Id.*

91.     The April 1999 Notice expressly applied to all IRS drugs - other nitroglycerin

controlled release capsules that were also not the subject of an approved application.

92.     The following Defendants ignored the 1984 and 1999 Notices and continued to

market their products without FDA approval and despite FDA's finding that there was a lack of

evidence that their products were effective. The Defendants nevertheless expressly represented to

CMS that their drugs were Covered Outpatient Drugs.

93.     These unapproved oral nitroglycerin products, along with their NDC numbers,

partial, representative amounts paid by Medicaid, and false FDA approval dates, are as follows:

(a)

| Defendant<br>Goldline | | Product<br>Time Capsules |
|---|---|---|
| **NDC** | **False FDA Approval Date** | **Amount Paid (96-03)** |
| 0182 0702 | 09/08/80 | $684,802.00 |
| 0182 0703 | 06/13/88 | $782,678.00 |
| 0182 1670 | 08/23/88 | $115,944.00 |
| | **TOTAL:** | **$1,583,424.00** |

(b)

46

| Defendant<br>Major | | Product<br>Oral Nitroglycerin |
|---|---|---|
| **NDC** | **False FDA Approval Date** | **Amount Paid (96-03)** |
| 0904 0643 | 09/30/90 | $302,453.00 |
| 0904 0644 | 09/30/90 | $397,597.00 |
| 0904 0647 | 09/30/90 | $74,161.00 |
| | **TOTAL:** | **$774,211.00** |

(c)

| Defendant<br>United | | Product<br>Oral Nitroglycerin |
|---|---|---|
| **NDC** | **False FDA Approval Date** | **Amount Paid (96-03)** |
| 00677 0485 | 09/30/90 | $263,639.00 |
| 00677 0486 | 09/30/90 | $252,322.00 |
| 00677 0967 | 09/30/90 | $40,753.00 |
| | **TOTAL:** | **$556,714.00** |

(d)

| Defendant<br>Rugby | | Product<br>Oral Nitroglycerin |
|---|---|---|
| **NDC** | **False FDA Approval Date** | **Amount Paid (96-03)** |
| 00536 4083 | 08/01/79 | $380,481.00 |
| 00536 4090 | None | $96,694.00 |
| 00536 4820 | None | $6,475.00 |
| | **TOTAL:** | **$483,650.00** |

(e)

| Defendant<br>Qualitest | | Product<br>Oral Nitroglycerin |
|---|---|---|
| **NDC** | **False FDA Approval Date** | **Amount Paid (96-03)** |
| 00603 4782 21 | 07/01/90 | $377,758.00 |
| 00603 4783 21 | 07/01/90 | $513,063.00 |
| 00603 4784 20 | 07/01/90 | $401,814.00 |
| | **TOTAL:** | **$1,292,635.00** |

### c. Other DESI LTE Drugs

94.    Each product below is unapproved and is identical, related or similar to other

DESI-LTE Code 5 products and is therefore considered DESI-LTE as well, under 21 CFR 310.6.

95.    Some of the products below were made up of brompheniramine/ pseuedoephedrine in extended release form.  In 47 Fed. Reg. 23809 (June 1, 1982), the FDA declared this formulation to be a New Drug, specifically naming Disophrol Tablets containing dexbrompheniramine maleate and pseudoephedrine sulfate. Further, to the extent these are IRS to other Brompheniramine extended release products, then FDA determined these Brompheiniramine extended release products to be DESI LTE in 47 Fed. Reg. 4346 (January 28, 1982). *See also* 49 Fed. Reg. 153 (January 3, 1984).

96.    The NDC numbers, partial, representative amounts paid by Medicaid, false FDA approval date and the applicable DESI Notice and/or Federal Register citations demonstrating DESI-LTE 5 status (less than effective for *all* indications), are as follows:

(a)

| Defendant Healthpoint | | | Product Xenaderm – Trypsin/Castor Oil & Peruvian Balsam Ointment |
|---|---|---|---|
| **NDC** | **False FDA Approval Date** | **DESI Notice(s)** | **Amount Paid (96-03)** |
| 00064 3900 | 12/21/01 | #10110 (2/12/72) | $11,160,698.00 |
| | | **TOTAL:** | **$11,160,698.00** |

(b)

| Defendant Mylan | | | Product Granulex – Trypsin/Castor Oil & Peruvian Balsam Topical Spray |
|---|---|---|---|
| **NDC** | **False FDA Approval Date** | **DESI Notice(s)** | **Amount Paid (96-03)** |
| 62794 0002 (Bertek) | 9/30/90 | #10110 (2/12/72) | $6,221,853.00 |
| 00514 0001 (Dow Hickam) | 9/30/90 | | $10,396,756.00 |
| | | **TOTAL:** | **$16,618,609.00** |

(c)

| Defendant Rugby | | Product Granumed |
|---|---|---|
| **NDC** | **DESI Notice(s)** | **Amount Paid (96-03)** |
| 00536 1371 | #10110 (2/12/72) | $422,684.00 |
| | **TOTAL:** | **$422,684.00** |

(d)

| Defendant Qualitest | | | Product Granulderm – Trypsin/Castor Oil & Peruvian Balsam Ointment |
|---|---|---|---|
| **NDC** | **False FDA Approval Date** | **DESI Notice(s)** | **Amount Paid (96-03)** |
| 00603 1270 | 7/01/90 | #10110 (2/12/72) | $2,015,262.00 |
| | | **TOTAL:** | **$2,015,262.00** |

(e)

| Defendant Qualitest | | | Product Proctosert Hydrocortisone Acetate Suppository |
|---|---|---|---|
| **NDC** | **False FDA Approval Date** | **DESI Notice(s)** | **Amount Paid (02-06)** |
| 00603 8136 | 09/01/02 | #11114, 39 Fed. Reg. 841 (1/3/74) | $2,758,086.00 |
| | | **TOTAL:** | **$2,758,086.00** |

(f)

| Defendant Qualitest | | | Product Zolene HC Otic Solution – Pramoxine-HC-Chloroxylenol Otic |
|---|---|---|---|
| **NDC** | **False FDA Approval Date** | **DESI Notice(s)** | **Amount Paid (02-06)** |
| 00603 7495 | 01/01/03 | 53 Fed. Reg. 25013 | $516,354.00 |
| | | **TOTAL:** | **$516,354.00** |

(g)

| Defendant Qualitest | | | Product Zolene HC Aqueous Otic Drops – Pramoxine-HC-Chloroxylenol |
|---|---|---|---|
| **NDC** | **False FDA Approval Date** | **DESI Notice(s)** | **Amount Paid (02-06)** |
| 00603 7496 | 01/01/01 | 53 Fed. Reg. 25013 | $504,562.00 |
| | | **TOTAL:** | **$504,562.00** |

(h)

| Defendant Ferndale | | | Product Pramosone – pramoxine – HC cream 1-2.5% |
|---|---|---|---|
| **NDC** | **False FDA Approval Date** | **DESI Notice(s)** | **Amount Paid (02-06)** |
| 00496 0716 | 09/30/90 | 53 Fed. Reg. 25013 | $497,574.00 |
| 00496 0717 | 09/30/90 | | $1,436,737.00 |
| 00496 0729 | 09/30/90 | | $461,320.00 |
| 00496 0763 | 09/30/90 | | $75,618.00 |
| 00496 0777 | 09/30/90 | | $200,295.00 |
| | | **TOTAL:** | **$2,671,544.00** |

(i)

| Defendant Ferndale | | | Product Analpram HC Cream & Lotion – Hydrocortisone Acetate with Pramoxine |
|---|---|---|---|
| **NDC** | **False FDA Approval Date** | **DESI Notice(s)** | **Amount Paid (02-06)** |
| 00496 0800 | 09/30/90 | 53 Fed. Reg. 25013 | $2,950,224.00 |
| 00496 0778 | 09/30/90 | | $2,064,673.00 |
| 00496 0829 | 09/30/90 | | $88,955.00 |
| | | **TOTAL:** | **$5,103,852.00** |

(j)

| Defendant United | | | Product Uni-Hist DM – PSE, Bromphen, DM, GG |
|---|---|---|---|
| NDC | False FDA Approval Date | DESI Notice(s) | Amount Paid (02-06) |
| 00677 1878 | 09/30/90 | 47 Fed. Reg. 11973 | $515,433.00 |
| 00677 1879 | 09/30/90 | | $2,899,246.00 |
| | | TOTAL: | $3,414,679.00 |

(k)

| Defendant Sciele | | | Product Protuss Liquid - Hydrocodone/PotGuaiac/PSE |
|---|---|---|---|
| NDC | False FDA Approval Date | DESI Notice(s) | Amount Paid |
| 59630 0100 | 1/01/93 | 47 Fed. Reg. 11973 | $903,833.00 |
| | | TOTAL: | $903,833.00 |

(l)

| Defendant Sciele | | | Product Zoto HC Ear Drops – pramoxine, HC, Chloroxylenol, Otic |
|---|---|---|---|
| NDC | False FDA Approval Date | DESI Notice(s) | Amount Paid |
| 59630 0135 | 3/06/94 | 53 Fed. Reg. 25013 | $848,991.00 |
| | | TOTAL: | $848,991.00 |

(m)

| Defendant Actavis | | | Product Hemorrhoidal HC Suppositories 25mg – hydrocortisone acetate |
|---|---|---|---|
| NDC | False FDA Approval Date | DESI Notice(s) | Amount Paid (03-07) |
| 00472 0511 | 9/30/90 | 53 Fed. Reg. 25013 | $154,012.00 |
| | | TOTAL: | $154,012.00 |

(n)

| Defendant Actavis | | | Product Palgic D Ext. Rel. – Carbinoxamine/PSE |
|---|---|---|---|
| **NDC** | **False FDA Approval Date** | **DESI Notice(s)** | **Amount Paid (96-04)** |
| 00472 0727 | 01/01/85 | 47 Fed. Reg. 21301 | $4,162,020.00 |
| | | 48 Fed. Reg.34514 | |
| | | **TOTAL:** | **$4,162,020.00** |

(o)

| Defendant Pan American | | | Product Palgic – CBM, PSE: SR – Palgic DS– CBM, PSE |
|---|---|---|---|
| **NDC** | **False FDA Approval Date** | **DESI Notice(s)** | **Amount Paid (96-04)** |
| 00525 6121 | 05/25/95 | 47 Fed. Reg. 21301 | $6,625,798.00 |
| 00525 6123 | 05/25/95 | 48 Fed. Reg. 34514 | $653,278.00 |
| 00525 6131 | 10/11/85 | | $9,208,188.00 |
| 00525 6367 | None | | $4,580,375.00 |
| 00525 6425 | 08/08/95 | | $5,957,598.00 |
| | | **TOTAL:** | **$27,025,237.00** |

(p)

| Defendant Pan American | | | Product Pannaz -- phenylephrine HC1, chlorpheniramine maleate, methscopolamine nitrate |
|---|---|---|---|
| **NDC** | **False FDA Approval Date** | **DESI Notice(s)** | **Amount Paid (Thru 03)** |
| 00525 0780 | None | 48 Fed. Reg. 56854 | $857,607.00 |
| 00525 0788 | 1/1/84 | | $562,447.00 |
| | | **TOTAL:** | **$1,420,054.00** |

(q)

| Cypress | | | Bromhist PDX – Phenyleph, Bromphen, DM, Guaifen |
|---|---|---|---|
| **NDC** | **False FDA Approval Date** | **DESI Notice(s)** | **Amount Paid (04)** |
| 60258 0429 | None | 47 Fed. Reg. 11973 | $303,372.00 |
| | | On 8/4/09 CMS DESI LTE List | |
| | | **TOTAL:** | **$303,372.00** |

(r)

| Cypress | | | Bromhist DM – PSE, Bromphen, DM, GG |
|---|---|---|---|
| **NDC** | **False FDA Approval Date** | **DESI Notice(s)** | **Amount Paid (03-06)** |
| 60258 0446 | 06/30/90 | 47 Fed. Reg. 11973 | $578,243.00 |
| | | **TOTAL:** | **$578,243.00** |

(s)

| Defendant Medpointe | | | Product Rynatan Pediatric Suspension – chlorpheniramine tannate, phenylephrine tannate, pyrilamine tannate |
|---|---|---|---|
| **NDC** | **False FDA Approval Date** | **DESI Notice(s)** | **Amount Paid (96-03)** |
| 00037 0713 | None | | $990,225.00 |
| 00037 0714 | 9/30/90 | 48 Fed. Reg. 5864 | $2,567,218.00 |
| 00037 0715 | 9/30/90 | | $3,467,588.00 |
| | | **TOTAL:** | **$7,025.301.00** |

(t)

| Defendant Medpointe | | | Product Rynatuss and Rynatuss Pediatric – cpm tan/carbetapentane tan/eph tan/phenyleph tan |
|---|---|---|---|
| **NDC** | **False FDA Approval Date** | **DESI Notice(s)** | **Amount Paid (03-07)** |
| 00037 0717 | 9/30/90 | 37 Fed. Reg. 25249 [DESI 11562] | $1,265,629.00 |
| 00037 0718 | 9/30/90 | | $607,797.00 |
| | | **TOTAL:** | **$1,873,426.00** |

(u)

| Defendant Major | | | Product Rondamine TR Tablets Extended Release – Carbinoxamine, PSE |
|---|---|---|---|
| **NDC** | **False FDA Approval Date** | **DESI Notice(s)** | **Amount Paid (96-03)** |
| 0904 3250 | 9/30/90 | 47 Fed. Reg. 2130; 48 Fed. Reg. 34514 | $52,315.00 |
| | | **TOTAL:** | **$52,315.00** |

53

(v)

| Defendant Hi-Tech | | | Product Tannate – chlorpheniramine, carbetapentane |
|---|---|---|---|
| **NDC** | **False FDA Approval Date** | **DESI Notice(s)** | **Amount Paid (96-03)** |
| 50383 0861 | 10/01/90 | 38 Fed. Reg. 4006 72 Fed. Reg. 29517 | $1,240,604.00 |
| | | **TOTAL:** | **$1,240,604.00** |

(w)

| Defendant Teva | | | Product Granulderm – Trypsin, Castor Oil, Peruvian balsam |
|---|---|---|---|
| **NDC** | **False FDA Approval Date** | **DESI Notice(s)** | **Amount Paid (96-03)** |
| 38245 0607 | None | #10110 (2/12/72) | $68,403.00 |
| | | **TOTAL:** | **$68,403.00** |

(x)

| Defendant Teva | Formulation | | | Product R-Tannate Tablets – Chlorpheniramine tannate, Phenylephrine tannate, pyrilamine tannate |
|---|---|---|---|---|
| **NDC** | | **False FDA Approval Date** | **DESI Notice(s)** | **Amount Paid (96-03)** |
| 38245 0113 | (R-Tannate Tablets) | 9/30/90 | 48 Fed. Reg. 5864 | $1,474,070.00 |
| 38245 0109 | (R-Tannate Pediatric Suspension) | 9/30/90 | | $6,140,082.00 |
| | | | **TOTAL:** | **$7,614,152.00** |

(y)

| Defendant Duramed | | | Product Triotann Pediatric Suspension – Chlorpheniramine tannate, phenylephrine tannate, pyrilamine tannate |
|---|---|---|---|
| **NDC** | **False FDA Approval Date** | **DESI Notice(s)** | **Amount Paid (96-03)** |
| 51285 0717 | 10/01/93 | 48 Fed. Reg. 5864 | $4,362,154.00 |
| | | **TOTAL:** | **$4,362,154.00** |

(z)

| Defendant Blansett | Formulation | | | Product Cortane-B Lotion & Solution – Chloroxylenol/ hydrocortisone/ pramoxine HCl |
|---|---|---|---|---|
| **NDC** | | **False FDA Approval Date** | **DESI Notice(s)** | **Amount Paid (97-3rd Qtr 08)** |
| 51674 0116 | (Cortane-B Solution) | 03/01/93 | | $4,212,509.00 |
| 51674 0117 | (Cortane-B Lotion) | 03/01/93 | DESI Notice 8656 53 Fed. Reg. 25013 | $4,015,954.00 |
| 51674 0118 | (Cortane-B Solution) | 06/01/98 | | $893,062.00 |
| | | | **TOTAL:** | **$9,121,525.00** |

(aa)

| Defendant Blansett | | | Product Poly DH Liquid – hydrocodone; potassium guaiacolsulfonate |
|---|---|---|---|
| **NDC** | **False FDA Approval Date** | **DESI Notice(s)** | **Amount Paid (02-06)** |
| 51674 0212 | 11/01/00 | 47 Fed. Reg. 11973 DESI 5914 and 6514 | $1,127,268.00 |
| 51674 0012 | 09/01/93 | | $548,783.00 |
| | | **TOTAL:** | **$1,676,051.00** |

(bb)

| Defendant Hi-Tech (ECR) | | | Product Lodrane LD and Liquid – PSE & Brompheniramine |
|---|---|---|---|
| **NDC** | **False FDA Approval Date** | **DESI Notice(s)** | **Amount Paid (02-06)** |
| 00095 6004 | 09/01/94 | 47 Fed. Reg. 4346 | $2,353,948.00 |
| 00095 6006 | 02/08/93 | | $683,042.00 |
| 00095 0645 | 07/01/02 | | $2,210,674.00 |
| 00095 1200 | 11/01/04 | | $2,015,565.00 |
| 00095 1290 | 12/15/06 | | 4,674,030.00 |
| | | **TOTAL:** | **$11,937,259.00** |

55

(cc)

| Defendant Medpointe | | | Product Tussi 12 & Tussi 12 S – carbetapentane tannate/chlorpheniramine tannate |
|---|---|---|---|
| **NDC** | **False FDA Approval Date** | **DESI Notice(s)** | **Amount Paid (03-07)** |
| 00037 0681 | 9/30/90 | 37 Fed. Reg. 25249 [DESI 11562] | $551,221.00 |
| 00037 0682 | 9/30/90 | | $858,115.00 |
| | | **TOTAL:** | **$1,409,336.00** |

(dd)

| Defendant Medpointe | | | Product Tussi 12 D & Tussi 12 D S – carbetapentane tannate/phenylephrine tannate/pyrilamine tannate |
|---|---|---|---|
| **NDC** | **False FDA Approval Date** | **DESI Notice(s)** | **Amount Paid (03-07)** |
| 00037 0691 | 9/30/90 | 37 Fed. Reg. 25249 [DESI 11562] | $3,224,875.00 |
| 00037 0692 | 9/30/90 | | $7,272,213.00 |
| | | **TOTAL:** | **$10,497,088.00** |

(ee)

| Defendant Actavis | | | Product Auroto – antipyrine/benzocaine |
|---|---|---|---|
| **NDC** | **False FDA Approval Date** | **DESI Notice(s)** | **Amount Paid (03-07)** |
| 00472 0016 | 9/30/90 | 51 Fed. Reg. 28656 47 Fed. Reg. 35874 [DESI 12813] | $793,788.00 |
| | | **TOTAL:** | **$793,788.00** |

(ff)

| Defendant Hi-Tech | | | Product Quad-Tuss Tannate Pediatric Suspension– carbetapentane tannate/chlorpheniramine tannate/eph tannate |
|---|---|---|---|
| **NDC** | **False FDA Approval Date** | **DESI Notice(s)** | **Amount Paid (03-06)** |
| 50383 0809 | 9/30/90 | 37 Fed. Reg. 25249 [DESI 11562] | $2,818,288.00 |
| | | **TOTAL:** | **$2,818,288.00** |

(gg)

| Defendant Hi-Tech | | | Product Tannate 12's Suspension – carbetapentane tannate/chlorpheniramine tannate/ |
|---|---|---|---|
| **NDC** | **False FDA Approval Date** | **DESI Notice(s)** | **Amount Paid (03-06)** |
| 50383 0863 | 10/01/90 | 37 Fed. Reg. 25249 [DESI 11562] | $1,502,324.00 |
| | | **TOTAL:** | **$1,502,324.00** |

(hh)

| Defendant Cypress | | | Product Chlordex GP – cpm/dm/gg/phenylephrine hcl |
|---|---|---|---|
| **NDC** | **False FDA Approval Date** | **DESI Notice(s)** | **Amount Paid (03-07)** |
| 60258-0246 | 9/30/90 | On 8-4-09 CMS DESI LTE List | $115,217.00 |
| | | **TOTAL:** | **$115,217.00** |

(ii)

| Defendant Cypress | | | Product Chlordex A 12 Extended Release Tablet – cpm/phenylephrine hcl |
|---|---|---|---|
| **NDC** | **False FDA Approval Date** | **DESI Notice(s)** | **Amount Paid (03-07)** |
| 60258-0283 | 9/30/90 | On 8-4-09 CMS DESI LTE List | $709,954.00 |
| 60258-0313 | 9/30/90 | | $791,639.00 |
| | | **TOTAL:** | **$1,501,593.00** |

(jj)

| Defendant Cypress | | | Product Tannic 12 S – carbetapentane tannate/chlorpheniramine tannate |
|---|---|---|---|
| **NDC** | **False FDA Approval Date** | **DESI Notice(s)** | **Amount Paid (03-07)** |
| 60258 0302 | 9/30/90 | 37 Fed. Reg. 25249 [DESI 11562] | $939,802.00 |
| | | **TOTAL:** | **$939,802.00** |

(kk)

| Defendant Cypress | | | Product Bellahist D LA Atropine/Cpm/Hyoscyamine/Pe/ Scopolamine |
|---|---|---|---|
| **NDC** | **False FDA Approval Date** | **DESI Notice(s)** | **Amount Paid (03-07)** |
| 60258-0283 | 9/30/90 | | $709,954.00 |
| | | **TOTAL:** | **$709,954.00** |

(ll)

| Defendant Cypress | *\* 47 Fed. Reg. 11973(DESI). See also letter dated 3-12-04 from FDA to Carolina Pharmaceuticals ("These products are new drugs because they contain potassium guaicolsulfonate"* | | Product Hy-KXP – hydrocodone bitartrate/potassium guaicolsulfonate |
|---|---|---|---|
| **NDC** | **False FDA Approval Date** | **DESI Notice(s)** | **Amount Paid (2003-2007)** |
| 60258 0735 | 9/30/90 | 41 Fed. Reg. 38359 (DESI 6514); also see 47 Fed. Reg. 11973 (DESI 5914) | $177,951.00 |
| | | **TOTAL:** | **$177,951.00** |

58

(mm)

| Defendant Hawthorn | | | Product Dytan CS Suspension and Extended Release Tablet – Carbetapentane tannate/phenylephrine tannate/diphenhydramine tannate |
|---|---|---|---|
| NDC | False FDA Approval Date | DESI Notice(s) | Amount Paid (2003 - 3rd qtr 2008) |
| 63717 0580 Suspension | 9/30/90 | 37 Fed. Reg. 25249 [DESI 11562] | $3,430,376.00 |
| 63717 0581 TER | 6/30/90 | | $1,965,638.00 |
| | | TOTAL: | $5,396,014.00 |

(nn)

| Defendant Hawthorn | | | Product Dytan CD Suspension – Carbetapentane/Diphenhydramine/Phenylephrine |
|---|---|---|---|
| NDC | False FDA Approval Date | DESI Notice(s) | Amount Paid (2003 - 3rd qtr 2008) |
| 63717 0585 | None | 37 Fed. Reg. 25249 [DESI 11562] | $660,337.00 |
| | | TOTAL: | $660,337.00 |

(oo)

| Defendant Hawthorn | | | Product Dytan AT Suspension– Carbetapentane tannate/Diphenhydramine tannate |
|---|---|---|---|
| NDC | False FDA Approval Date | DESI Notice(s) | Amount Paid (2003 - 3rd qtr 2008) |
| 63717 0590 | None | 37 Fed. Reg. 25249 [DESI 11562] | $239,276.00 |
| | | TOTAL: | $239,276.00 |

### 3. Unapproved Levothyroxine – A Serious Threat To Public Health

97.     For more than forty years, Levothyroxine sodium tablets (hereinafter "LS") have been prescribed by physicians for the treatment of thyroid diseases, including hypothyroidism.

98.     The prescription drug LS was lawfully on the market until 1997, when it was the subject of a final determination by the Secretary of HHS, through the FDA, that it was a "new drug" within the meaning of 21 U.S.C. §321(p).

99.     On August 14, 1997, FDA announced that, despite a long history of use, orally-administered LS products were "new drugs" and that manufacturers who wished to continue marketing them would have to submit New Drug Applications for FDA approval.  62 Fed. Reg. 43535 (hereinafter "August 1997 Notice").

100.    The August 1997 Notice also stated that "no currently marketed orally-administered LS product has been shown to demonstrate consistent potency and stability and, thus, no currently marketed orally-administered LS product is generally recognized as safe and effective."  *Id*. at 43538. The FDA stated that no alternative drug to LS is relied on by the medical community as an adequate substitute.

101.    The August 1997 Notice stated that there was "new information showing significant stability and potency problems with orally administered LS products" and that the "lack of stability and consistent potency has the potential to cause serious health consequences to the public." *Id*.

102.    The August 1997 Notice stated that after August 14, 2000 (later amended to 2001 as explained below) any orally-administered drug product containing LS marketed without an FDA-approved new drug application would be subject to adverse regulatory action.

Nevertheless, the Defendants identified below have continued to market, distribute, and/or sell

unapproved levothyroxine since that time.

103.    Unapproved levothyroxine is not a Covered Outpatient Drug.

104.    Since the introduction of orally administered LS products, almost every

manufacturer of the drug has regularly reported recalls that were the result of potency and

stability problems.

105.    On August 21, 2000, the FDA approved Jerome Stevens Pharmaceuticals, Inc.'s

(hereinafter "Jerome") NDA for Unithroid™, the first LS drug approved by the FDA under the

new requirements.  *See*, FDA *Unithroid Approval Talk Paper*, available at

http://www.scienceblog.com/community/older/archives/M/1/fda0638.htm. In the *Talk Paper*, the

FDA announced: "With the approval of the NDA for Unithroid™, patients and physicians now

have available to them an oral levothyroxine sodium drug product that has been determined to be

safe and effective by the FDA and that also meets FDA standards for manufacturing processes,

purity, potency and stability." *Id*. The FDA further stated:

> Although oral levothyroxine drugs products have
> been marketed in the Unites States since the 1950's,
> the approval of Unithroid represents the first time
> that a single ingredient oral levothyroxine product
> has been approved by the FDA.  The unapproved
> thyroid hormone replacement products that have
> been on the market have been associated with
> stability and potency problems.   These problems
> have resulted in product recalls and have the
> potential to cause serious health consequences to
> the public.

*Id*.

106.    On July 12, 2001, the FDA issued its *Guidance on Levothyroxine Sodium*

*Products Compliance* (hereinafter "*LS Guidance*"). The *LS Guidance* and a simultaneous press

61

release made it clear that (1) "Manufacturers of unapproved oral levothyroxine sodium drug products who *"[did] not have an NDA pending"* with the FDA by August 14, 2001, should cease distribution of their products by that date or they will be subject to regulatory action," and that (2) manufacturers of unapproved oral levothyroxine sodium drug products *with NDAs pending as of August 14, 2001,* were to reduce the distribution of these products according to an incremental reduction of average monthly distribution, with complete ceasing of distribution by August 14, 2003 (emphases added).

107.    The Defendants identified below submitted false records or statements to CMS, caused the submission of false claims and also caused false claims to be paid or approved for the levothyroxine products identified below. The Defendants' submissions included a false representation that their levothyroxine drugs met the definition of a Covered Outpatient Drug, and in many instances contained a false FDA approval date.

108.    The NDC numbers, partial, representative amounts paid by Medicaid and false FDA approval dates are as follows:

109.    QUALITEST submitted false information to CMS for its *generic levothyroxine* product, thereby ostensibly qualifying that drug for reimbursement from the Medicaid programs. The NDC numbers and false FDA approval dates submitted by Qualitest are as follows:

| Defendant Qualitest | Product Generic Levothyroxine |
|---|---|
| NDC | False FDA Approval Date |
| 00603 4192 | 10/01/91 |
| 00603 4193 | 10/01/91 |
| 00603 4194 | 10/01/91 |
| 00603 4195 | 07/01/90 |
| 00603 4196 | 07/01/90 |
| 00603 4197 | 10/01/91 |

| | |
|---|---|
| 00603 4198 | 10/01/91 |
| 00603 4199 | 10/01/00 |
| 00603 4200 | 01/01/97 |
| 00603 4201 | 10/01/00 |
| 00603 4202 | 10/01/00 |
| 00603 4203 | 10/01/00 |

The yearly breakdown for the QUALITEST Levothyroxine Medicaid damages beginning with third quarter 2001, is as follows:

| Defendant Qualitest | Product Generic Levothyroxine |
|---|---|
| Year | Amount Paid |
| 2001 (3rd & 4th Quarter Only) | $1,132,210.00 |
| 2002 | $573,677.00 |
| 2003 | $33,470.00 |
| 2004 | $4,521.00 |
| 2005 | $13,694.00 |
| **TOTAL:** | **$1,757,572.00** |

110.    UNITED RESEARCH submitted false information to CMS for its *generic levothyroxine* product, thereby ostensibly qualifying that drug for reimbursement from the Medicaid programs.

The NDC numbers, and the false FDA approval dated submitted to CMS by United Research are as follows:

| Defendant United Research | Product Generic Levothyroxine |
|---|---|
| NDC | False FDA Approval Date |
| 00677 0078 | 09/30/90 |
| 00677 0079 | 09/30/90 |
| 00677 0769 | None |
| 00677 0992 | 09/30/90 |

| | |
|---|---|
| 00677 1637 | 06/30/90 |
| 00677 1648 | 06/01/98 |
| 00677 1649 | None |
| 00677 1650 | None |
| 00677 1690 | 03/01/98 |
| 00677 1691 | 07/01/98 |
| 00677 1692 | 09/01/98 |
| 00677 1693 | 09/30/90 |
| 00677 1694 | 09/30/90 |
| 00677 1695 | 09/30/90 |
| 00677 1696 | 09/30/90 |
| 00677 1697 | 09/30/90 |

111.    The yearly breakdown for the UNITED RESEARCH Levothyroxine Medicaid damages beginning with third quarter 2001 is as follows:

| Defendant United Research | Product Generic Levothyroxine |
|---|---|
| **Year** | **Amount Paid** |
| 2001 (3rd & 4th Quarter Only) | $264,217.00 |
| 2002 | $78,786.00 |
| 2003 | $5,011.00 |
| 2004 | $322.00 |
| 2005 | $688.00 |
| **TOTAL:** | **$349,024.00** |

**B. How Defendants' False Submissions Caused False Claims For Vitamins, Minerals And Other Dietary Supplements**

112.    By statute, only drugs – as opposed to vitamins and other dietary supplements – are eligible for federal reimbursement under the Medicaid program. Yet hundreds of millions of dollars of federal Medicaid funds have been used to pay for ineligible vitamins, minerals and other dietary supplements as a result of false claims caused by Defendants' actions.

113.    A Covered Outpatient Drug must: (1) be a drug, (2) for which an NDC is required, (3) used for a medically accepted indication. 42 U.S.C. §§ 1396r-8(k)(2)-(3). Dietary supplements do not meet any of these three criteria, although all three are required.

114.    First, dietary supplements are not drugs. The FDCA defines both drugs and dietary supplements.  A "dietary supplement" is a product intended to supplement the diet that bears or contains one or more of the following dietary ingredients:

> (A) a vitamin;
> (B) a mineral;
> (C) an herb or other botanical;
> (D) an amino acid;
> (E) a dietary substance for use by man to supplement the diet by increasing the total dietary intake; or
> (F) a concentrate, metabolite, constituent, extract, or combination of any ingredient described in clause (A), (B), (C), (D), or (E).

21 U.S.C. § 321(ff).

115.    A drug is defined as an "article intended for use in the diagnosis, cure, mitigation, treatment or prevention of disease" or intended to affect the structure or function of the body. 21 U.S.C. § 321(g)(1).

116.    Because dietary supplements are not drugs, they are not subject to approval by the FDA. 21 U.S.C. § 355(a). Only products subject to FDA approval can be Covered Outpatient Drugs. 42 U.S.C. § 1396r-8(k)(2)(a). None of the dietary supplements included in this complaint were or could be approved by the FDA as drugs.

117.    Second, only drugs are required to have an NDC, and each drug's NDC must be registered with the FDA. 21 U.S.C. § 360. The definition of Covered Outpatient Drug expressly excludes any products for which an NDC is not required. 42 U.S.C. § 1396r-8(k)(3). Thus, vitamins and other dietary supplements cannot be Covered Outpatient Drugs because an NDC is not required for them. In fact, manufacturers are prohibited from assigning NDCs to non-drugs,

such as dietary supplements. *See e.g.* FDA Warning Letter, # 2001-NOL-41, to PharmaScience

Laboratories, LLC., attached as **Exhibit G**. Valid NDCs must be registered with the FDA. None

of the NDCs assigned by manufacturers to the dietary supplements included in this complaint are

registered with the FDA.

118.    Third, only drugs used for "medically accepted indications" can be Covered

Outpatient Drugs.  42 U.S.C. § 1396r-8(k)(3).  A "medically accepted indication" is a use for a

*drug* which is either approved by the FDA or supported by a citation in the specified drug

compendia. 42 U.S.C. § 1396r-8(k)(6). Dietary supplements, as above, are neither approved by

the FDA nor do they appear in the drug compendia. Dietary supplements are not used for

"medically accepted indications."

119.    For these reasons, CMS has repeatedly emphasized in its periodic releases to

manufacturers and state Medicaid programs that dietary supplements are not Covered Outpatient

Drugs, and should not have NDCs.

120.    For example, manufacturers were reminded in 1997 that "[i]f any of your non-

drug products (vitamins or other products) have been improperly assigned an NDC and included

in your submission of covered outpatient drugs to the HCFA, please notify HCFA staff so that

those items can be deleted from the HCFA and state data systems." Medicaid Drug Rebate

Program Release to Drug Manufacturers, No. 30 (September 15, 1997).

121.    CMS has attempted over the years to find and remove Non-Drugs from the

innumerable items on the MDRI List. These efforts have been largely ignored by the Defendants,

who continue to submit their ineligible products as Covered Outpatient Drugs, causing the

federal Medicaid program to pay for them.

122. When it deletes or excludes non-drug products from the MDRI List, CMS

consistently cites the following explanation:

> The abovementioned products were *not approved as prescription drugs* by the Food and Drug Administration (FDA) under Section 505 or 507 of the Federal Food, Drug, and Cosmetic Act and therefore, *do not meet the definition of Covered Outpatient Drugs* as defined in Section 1927(k)(2) of the Social Security Act. (emphasis added)

*See, e.g.* CMS Medicaid Drug Rebate Program For State Medicaid Directors, Release No. 145,

March 7, 2007, at 6.

### C. Defendants' False Statements Caused Medicaid Payments To Be Made For Their Non-Drug Products

123. Despite the fact that their non-drug products meet none of the Covered Outpatient

Drug criteria, the Defendants knowingly represented in their Drug Rebate Agreements and

Quarterly Reports that their dietary supplements were in fact Covered Outpatient Drugs.

124. From 1996 to date, the Defendants knowingly made, used or caused to be made or

used false records or statements, submitted to CMS, which were material to a false or fraudulent

claim; knowingly caused false claims to be submitted for payment or approval; and, as a direct

result of Defendants falsely representing in their Drug Rebate Agreements and Quarterly Reports

that the non-drug products identified below were Covered Outpatient Drugs, caused the states

and CMS to pay false claims for these ineligible products.

125. CMS relied on Defendants' misrepresentations and included the Non-Drugs on the

MDRI List which it sent to the states, which in turn relied on this list in paying for these products

and submitting FFP claims for reimbursement to the federal government.

126. When they submitted their Rebate Agreements and Quarterly Reports, the

Defendants knowingly used false FDA approval dates, and/or false NDC numbers to make their

ineligible products appear eligible. The Defendants knew that CMS would rely on these false statements.

127.    By including Non Drugs in Rebate Agreements and in Quarterly Reports, the Defendants have caused Medicaid to pay hundreds of millions of dollars of false claims.  The amounts listed below for each product are approximations.

### 1. Non-Drugs Medicaid Paid For As A Result Of Defendants' Fraud

128.    The following is a list of the Non-Drugs identified in this Complaint, the False FDA Approval Dates, rogue NDC numbers, and the approximate amount of Medicaid reimbursements paid for these Non-Drugs for the years listed.

(a)

| Defendant Abbott | Product | | |
|---|---|---|---|
| **NDC** | | **False FDA Approval Date** | **Amount Paid (1996-2003)** |
| 00074 3741 | Dical-D Tablets | 4/1/1987 | $8,154,793.00 |
| 00074 6470 | Pedialyte 32oz bottle | None | $14,651,224.00 |
| 00074 6471 | Pedialyte Fruit Flavored 32oz bottle | None | $14,693,127.00 |
| 00074 0240 | Pedialyte GrapeFlavored 1L bottle | 5/01/1985 | $3,108,696.00 |
| 00074 0245 | Pedialyte Freezer Pops | 6/01/1996 | $3,259,745.00 |
| 00074 5175 | Pedialyte Bubble Gum Flavored 1L bottle | 7/1/1993 | $2,320,686.00 |
| 00074 5498 | Pedialyte Oral Electrolyte Main Sol. | 08/21/1986 | $34,215.00 |
| 00074 6089 | Cefol Film Tablets | 09/30/1990 | $1,280,505.00 |
| 00074 7079 | Fero Folic | 09/29/1990 | $1,277,255.00 |
| **NDC** | | **False FDA Approval Date** | **Amount Paid (2003 & 2006)** |
| 00074 7238 | Fero-Grad 500 Controlled Release Iron w/Vit C | 9/29/1990 | $ 9,899.00 |

| 00074 0116 | Vidaylin | 9/30/1990 | $2,685.00 |
| 00074 1184 | Calcium G | 9/30/1990 | $2,927.00 |
| 00074 1631 | Calcium GH | 1/28/1990 | $1,161.00 |
| 00074 2553 | Calcium A | 9/30/1990 | $967.00 |
| 00074 8928 | Vi-Day F + Iron Multivitamin | 9/30/1990 | $4,798.00 |
| 00074 8929 | Vi-Day F ADC + Iron Multivitamin | 9/30/1990 | $381.00 |
| 00074 9157 | Vitamin K-1 | 9/30/1990 | $21,553.00 |
| 00074 9158 | Vitamin K-1 | 9/30/1990 | $259,554.00 |
| 00074 7125 | Iberet-Folic 500 Controlled Release Iron w/Vit C & B Complex | 9/29/90 | $237,258.00 |
| | | **TOTAL:** | **$49,321,429.00** |

(b)

| Defendant Goldline | Product | | |
|---|---|---|---|
| **NDC** | | **False FDA Approval Date** | **Amount Paid (1996-2003)** |
| 00182 4428 | Vitamin A | 1/8/90 | $3,702,696.00 |
| 00182 0068 | Vitamin C Ascorbic Acid | 1/1/87 | $1,431,670.00 |
| 00182 4440 | One Tablet Daily w/Iron | 1/17/90 | $571,663.00 |
| 00182 6054 | Goldline Geri-vite liquid | 1/1/00 | $601,382.00 |
| 00182 0047 | Vitamin B1 100mg Tabs | 9/9/80 | $478,921.00 |
| 00182 4521 | Theragran-M Tablets | None | $8,854.00 |
| 00182 4532 | Theragran-M Tablets | None | $186.00 |
| 00182 6106 | Theragran-M Tablets | None | $65,334.00 |
| 00182 4158 | Certagen Senior Tabs | 2/5/94 | $264,449.00 |
| 00182 4159 | Certagen Tabs | None | $10,371.00 |
| 00182 4160 | Certagen Tabs | None | $71,398.00 |
| 00182 4162 | Certagen Tabs | 2/25/94 | $1,383,935.00 |
| 00182 4089 | Certagen Senior w/Lutein | 3/17/00 | $2,350.00 |
| 00182 6142 | Certagen Liquid | 1/1/00 | $823,668.00 |
| 00182 1381 | Fer Gen Sol Drops | 4/27/81 | $706,417.00 |
| 00182 0003 | Vitamin C Ascorbic Acid | 09/09/80 | $107,891.00 |
| 00182 0082 | Vitamin E | 9/08/80 | $427,570.00 |
| 00182 0086 | Vitamin B6 | 9/08/80 | $342,036.00 |
| 00182 0287 | DOS Capsule (Docusate) | 1/01/00 | $5,174,047.00 |
| 00182 0418 | Oyst-Cal D | 9/08/80 | $344,629.00 |
| 00182 0507 | Folic Acid | 3/31/72 | $2,220,444.00 |

| 00182 0809 | Alamag (magnesium/aluminum) | 12/07/42 | $791,650.00 |
| 00182 1407 | Z-Gen Vitamin Complex | 9/08/80 | $345,945.00 |
| 00182 1513 | Genfiber (psyllium husk) | 3/07/01 | $1,231,712.00 |
| 00182 1514 | Genfiber (psyllium husk) | 3/07/01 | $893,754.00 |
| 00182 1576 | Oyst-Cal 500 | 4/28/83 | $8,419,686.00 |
| 00182 4028 | Ferrous Sulfate | 9/09/80 | $5,347,675.00 |
| 00182 4029 | Ferrous Sulfate | 9/24/80 | $793,163.00 |

| **NDC** | | **False FDA Approval Date** | **Amount Paid (2003-2007)** |
| --- | --- | --- | --- |
| 00182 4031 | Ferrous Sulfate | | $202,002.00 |
| 00182 4048 | Glucosamine Sulfate | 8/04/99 | $149,573.00 |
| 00182 4062 | B-Plex Vitamin | 7/19/89 | $466,328.00 |
| 00182 4140 | Calcarb 600 | 9/03/84 | $410,677.00 |
| 00182 4141 | Calcarb 600 w/Vitamin D | 1/01/87 | $1,715,738.00 |
| 00182 4151 | Calcium Citrate | 2/09/94 | $120,145.00 |
| 00182 4314 | Fruity Chews Multivitamins | 12/07/95 | $157,084.00 |
| 00182 4418 | One-Tablet (Niacin) | 7/12/88 | $120,798.00 |
| 00182 4439 | Oyst-Cal D 500 | 9/01/87 | $9,237,834.00 |
| 00182 4491 | Stress w/Zinc | 3/18/94 | $294,355.00 |
| 00182 4518 | Therapeutic | 8/16/90 | $1,614,930.00 |
| 00182 4519 | Therapeutic-M | 7/09/90 | $2,823,685.00 |
| 00182 6107 | Theravite | 2/05/94 | $386,410.00 |
| 00182 6205 | Pediatric Electrolyte | 2/09/94 | $1,057,905.00 |
| 00182 6206 | Pediatric Electrolyte | 2/05/94 | $1,425,957.00 |
| 00182 6207 | Pediatric Electrolyte | 8/04/94 | $462,749.00 |
| | | **TOTAL:** | **$59,848,566.00** |

(c)

| **Defendant Rugby** | **Product** | | |
| --- | --- | --- | --- |
| **NDC** | | **False FDA Approval Date** | **Amount Paid (1996-2004)** |
| 00536 4046 | Multivitamin tablets | 6/7/78 | $3,015,519.00 |
| 00536 4799 | Vitamin E400 Soft Gel Caps | 2/18/79 | $1,574,056.00 |
| 00536 0160 | Vitamin C 500mg Syrup | 10/19/81 | $796,690.00 |
| 00536 4408 | Vitamin B6 50mg Pyridox | 12/10/79 | $505,541.00 |
| 00536 4680 | Vitamin B1 100mg Tabs | 3/29/75 | $462,845.00 |
| 00536 4660 | Therems film coated tablets | 11/25/80 | $460,988.00 |

70

| 00536 4661 | Therems-M film coated tablets | 11/25/80 | $1,351,015.00 |
| 00536 4667 | Therems-H tablets | 7/3/84 | $255,482.00 |
| 00536 3442 | Cerovite Tablets Advanced Formula | 7/2/85 | $718,626.00 |
| 00536 3443 | Cerovite Jr.  Chewable Tablets 60s | None | $84,542.00 |

| NDC | | False FDA Approval Date | Amount Paid (2003-2007) |
| --- | --- | --- | --- |
| 00536 2790 | Cerovite Liquid 8oz | 5/1/93 | $1,075,053.00 |
| 00536 0410 | Daily Vitamins | 4/14/97 | $390,490.00 |
| 00536 3549 | Daily Vitamins | None | $12,754.00 |
| 00536 3546 | Daily-Vite Tablets with Iron | 5/9/78 | $1,157,820.00 |
| 00536 3547 | Daily-Vite Tablets 1000s | 12/13/77 | $2,919,356.00 |
| 00536 5890 | Ferrous Sulfate 324mg | 12/30/79 | $5,311,078.00 |
| 00536 6889 | Calcium Chewable 500mg | 2/21/85 | $451,307.00 |
| 00536 4306 | Fiber-lax PolyCarbophil 500mg | 1/1/85 | $2,603,900.00 |
| 00536 6651 | Vitamin B | None | $968,357.00 |
| 00536 0004 | Oralyte Solution Unflavored | 8/01/92 | $1,198,901.00 |
| 00536 0650 | Ferrous Sulfate | 11/26/79 | $535,426.00 |
| 00536 0710 | Fer-Iron (Ferrous + Iron) | 12/10/79 | $170,003.00 |
| 00536 0935 | Oralyte Solution Fruit Flavored | 8/01/92 | $11,291,436.00 |
| 00536 1385 | Oralyte | None | $1,370,749.00 |
| 00536 1395 | Oralyte | None | $238,893.00 |
| 00536 2770 | Calcionate | 8/01/92 | $587,691.00 |
| 00536 3000 | Ear Wax Drops ½ oz. | 5/11/78 | $342,970.00 |
| 00536 3224 | Citrus Calcium D | 10/01/91 | $392,818.00 |
| 00536 3292 | Vitamin C | 1/27/79 | $393,896.00 |
| 00536 3414 | Calcium Carbonate | 8/27/79 | $2,875,685.00 |
| 00536 3416 | Calcium Gluconate | 12/20/79 | $243,270.00 |
| 00536 3422 | Calcium Lactate | 9/05/78 | $180,317.00 |
| 00536 3424 | Calcium 600 D | 10/31/84 | $436,921.00 |
| 00536 3426 | Calcium 600 | None | $315,064.00 |
| 00536 3448 | Chewable Vite-Tabs | 4/20/79 | $109,808.00 |
| 00536 3556 | Vitamin B12 | 8/14/79 | $123,377.00 |
| 00536 4106 | Oysco 500 | 7/03/84 | $1,848,165.00 |
| 00536 4444 | Reguloid Nat. Vegetable (psyllium husk) | 10/11/85 | $1,423,953.00 |
| 00536 4445 | Reguloid Nat. Vegetable (psyllium husk) | 10/11/85 | $1,240,970.00 |

| 00536 4742 | Cal-Gest (calcium carbonate) | 6/01/74 | $567,800.00 |
| 00536 4787 | Vitamin E | 7/11/75 | $146,698.00 |
| 00536 4799 | Vitamin E | 5/17/79 | $719,790.00 |
| 00536 4801 | Vitamin E | 12/03/79 | $109,448.00 |
| 00536 5090 | I Vite Lutein | 8/24/90 | $150,184.00 |
| 00536 5440 | Vitamin E | 12/01/76 | $52,206.00 |
| 00536 5904 | Senexon (calcium sennosides) | 4/01/97 | $228,663.00 |
| 00536 7817 | Oysco 500 D | 3/10/93 | $1,353,712.00 |
| 00536 8450 | Poly Vitamin | 3/06/79 | $239,908.00 |
| 00536 8501 | Tri-Vitamins | 9/01/81 | $148,018.00 |
| 00536 8530 | Poly Vitamin w/Iron | 7/03/79 | $151,454.00 |
| 00536 9920 | Alcohol Preps | 11/17/78 | $281,838.00 |
| | | **TOTAL:** | **$53,717,880.00** |

(d)

| Defendant Hi-Tech | Product | | |
| --- | --- | --- | --- |
| **NDC** | | **False FDA Approval Date** | **Amount Paid (1996-2004)** |
| 50383 0624 | Daly Vite | 09/30/90 | $1,084,719.00 |
| | | **TOTAL:** | **$1,084,719.00** |
| **NDC** | | **False FDA Approval Date** | **Amount Paid (03-06)** |
| 50383 0120 | Geri-Tonic | 10/1/90 | $13,936.00 |
| 50383 0167 | Vitamin C Liquid 500 | 9/30/90 | $123,241 |
| 50383 0623 | Dalyvite w/Iron | 9/30/90 | $20,879.00 |
| 50383 0625 | Polyvitamin Drops | 9/30/90 | $215,040.00 |
| 50383 0630 | Ferrous Sulfate | 9/30/90 | $259,436.00 |
| 50383 0632 | Polyvitamin | 9/30/90 | $274,707.00 |
| 50383 0635 | Tri-vitamin | 9/30/90 | $97,528.00 |
| 50383 0778 | Ferrous Sulfate | 10/1/91 | $106,509.00 |
| 50383 0785 | Equalizer Gas Relief Drops | 9/30/90 | $45,329.00 |
| 50383 0786 | Golden Age Liq. Vitamins | 10/1/90 | $56,596.00 |
| 50383 0921 | Calcium | 10/1/90 | $5,511.00 |
| 50383 0628 | Tri-Vitamin | 9/30/90 | $48,472.00 |
| 50383 0633 | Poly Vitamin | 8/1/93 | $94,000.00 |
| 50383 0634 | Poly Vitamin | 9/30/90 | $807,944.00 |
| 50383 0636 | Tri-Vitamin | 9/30/90 | $53,231.00 |
| 50383 0637 | Tri-Vitamin | 9/30/90 | $762,549.00 |

| 50383 0641 | Poly Vitamin | 9/30/90 | $117,617.00 |
| 50383 0642 | Poly Vitamin | 9/30/90 | $1,241,727.00 |
| 50383 0808 | Triple Vitamin | 9/30/90 | $229,642.00 |
| 50383 0683 | Thera-Plus | 4/01/93 | $305,402.00 |
| | | **TOTAL:** | **$4,879,296.00** |

(e)

| Defendant Major | Product | | |
|---|---|---|---|
| **NDC** | | **False FDA Approval Date** | **Amount Paid (1996-2004)** |
| 00904 0540 | Thera-M Tablets | None | $78,266.00 |
| | | **TOTAL:** | **$78,266.00** |
| **NDC** | | **False FDA Approval Date** | **Amount Paid (03-06)** |
| 00904 2641 | Certavite | 10/11/90 | $11,974.00 |
| 00904 2701 | Fiber-Eze | 9/30/90 | $8,465.00 |
| 00904 2702 | Fiber-Eze | 9/30/90 | $5,383.00 |
| 00904 2705 | Twice a Day | 9/30/90 | $2,081.00 |
| 00904 5050 | Pedia-Relief | 3/24/95 | $107,469.00 |
| 00904 5118 | Pediatric Electrolyte | 6/30/90 | $367,820.00 |
| 00904 5119 | Pediatric Electrolyte | 10/23/95 | $6,849.00 |
| 00904 5199 | Natural Fiber Therapy | 6/30/90 | $163,968.00 |
| 00904 5200 | 65 Natural Fiber | 6/30/90 | $115,295.00 |
| 00904 5201 | Natural Fiber | 6/30/90 | $957.00 |
| 00904 5202 | Natural Fiber | 6/30/90 | $9,846.00 |
| 00904 5217 | Twice a Day | 6/30/90 | $5,924.00 |
| 00904 5276 | Pediatric | 10/11/97 | $132,617.00 |
| 00904 5395 | Ferrex 150 | 10/11/90 | $13,822.00 |
| 00904 5396 | Ferrex 150 | 10/11/90 | $818.00 |
| 00904 5486 | Certa Vite | 10/1/00 | $23,313.00 |
| 00904 7611 | Fiber-Eze | 2/1/93 | $1,127.00 |
| 00904 7612 | Fiber-Eze | 2/1/93 | $2,582.00 |
| 00904 7613 | Fiber-Eze | 2/1/93 | $500.00 |
| 00904 7614 | Fiber-Eze | 2/1/93 | $3,513.00 |
| 00904 7659 | Pediatric Electrolyte | 9/30/90 | $226,204.00 |
| 00904 7660 | Pediatric Electrolyte | 3/1/93 | $420.00 |
| 00904 7695 | Calcium | 6/1/93 | $13,452.00 |
| 00904 3397 | Tricolate 100mg Tablet | 9/30/90 | $256.00 |
| 00904 3430 | Amantadine 100MG Red | 8/5/86 | $59,734.00 |
| 00904 3440 | Vapocet | 4/21/88 | $159,360.00 |
| 00904 5274 | Poly Fi Fl | 10/1/97 | $8,547.00 |

| 00904 7850 | Pediatric Electrolyte | 1/19/94 | $14,105.00 |
| 00904 7911 | Mag Delay (magnesium) | 5/16/94 | $610,664.00 |
| | | **TOTAL:** | **$2,155,331.00** |

(f)

| Defendant Qualitest | Product | | |
|---|---|---|---|
| **NDC** | | **False FDA Approval Date** | **Amount Paid (2003 & 2006)** |
| 00603 0095 | Calcium | 7/1/90 | $13,231.00 |
| 00603 0096 | Calcium | 7/1/90 | $3,209.00 |
| 00603 0097 | Calcium | 7/1/90 | $665.00 |
| 00603 0179 | Ferrous | 1/1/01 | $334,752.00 |
| 00603 0181 | Fibertab | 7/1/90 | $40,142.00 |
| 00603 0325 | Vitamin | 6/1/99 | $49,650.00 |
| 00603 0331 | Vitamin | 6/1/99 | $98,617.00 |
| 00603 0410 | Vitamin | 7/1/90 | $1,635.00 |
| 00603 0762 | Ferrous | 7/1/90 | $204,067.00 |
| 00603 0763 | Ferrous | 7/1/90 | $86,398.00 |
| 00603 0987 | Vegetable Fiber | 7/1/90 | $41,747.00 |
| 00603 0988 | Vegetable Fiber | 7/1/90 | $7,979.00 |
| 00603 0989 | Vegetable Fiber | 7/1/90 | $ 17,485.00 |
| 00603 0990 | Vegetable Fiber | 7/1/90 | $32,800.00 |
| 00603 1256 | Gevratonic | 7/1/90 | $ 21,577.00 |
| 00603 1365 | L-Tonic | 7/1/90 | $49,543.00 |
| 00603 1449 | Multivits | 7/1/90 | $499,791.00 |
| 00603 1450 | Multivits | 7/1/90 | $77,621.00 |
| 00603 1452 | Multi Vit/ | 7/1/90 | $218,396.00 |
| 00603 1453 | Multi Vit/ | 7/1/90 | $22,031.00 |
| 00603 1785 | Trivit/Flu | 7/1/90 | $384,532.00 |
| 00603 1786 | Trivit/Flu | 7/1/90 | $23,145.00 |
| 00603 1787 | Trivit/Flu | 7/1/90 | $12,877.00 |
| 00603 4170 | K-Effervesc | 7/1/90 | $68,308.00 |
| 00603 4710 | Multi Vit/ | 1/1/96 | $404,716.00 |
| 00603 4711 | Multivitamin | 7/1/90 | $313,644.00 |
| 00603 4712 | Multivitamin | 7/1/90 | $188,558.00 |
| 00603 6215 | Tricosal Choline Magnesium | 7/1/90 | $16,403.00 |
| 00603 6216 | Tricosal Choline Magnesium | 7/1/90 | $59,329.00 |
| 00603 6217 | Tricosal Choline Magnesium | 7/1/90 | $11,110.00 |
| 00603 6381 | Vica Forte Multivit | 7/1/90 | $171,518.00 |
| 00603 6430 | Yohimbine | 7/1/90 | $12,627.00 |
| 00603 5969 | Therobec | 7/01/90 | $73,054.00 |

74

| 00603 5970 | Therobec Multivitamin | 7/01/90 | $621,659.00 |
|---|---|---|---|
| | | **TOTAL:** | **$4,182,816.00** |

(g)

| Defendant United Research Labs | Product | | |
|---|---|---|---|
| **NDC** | | **False FDA Approval Date** | **Amount Paid (2003 & 2006)** |
| 00677 0034 | Calcium | Not there | $648.00 |
| 00677 0069 | Ferrous Gluconate | 7/1/90 | $53,087.00 |
| 00677 0070 | Ferrous Sulfate | 9/30/90 | $752,340.00 |
| 00677 0071 | Ferrous Sulfate | 9/30/90 | $1,545,720.00 |
| 00677 0131 | Sodium Bicarbonate | 9/30/90 | $296,102.00 |
| 00677 0163 | Uni-Daily w/Iron | 7/1/90 | $191,489.00 |
| 00677 0164 | Uni-Daily w/Iron | 7/1/90 | $25,009.00 |
| 00677 0190 | Vitamin C | 9/30/90 | $14,295.00 |
| 00677 0210 | Vitamin E Reg. Acetate | 9/30/90 | $53,589.00 |
| 00677 0381 | Vitamin E Reg. Acetate | 6/30/90 | $15,114.00 |
| 00677 0424 | Niacin | 9/30/90 | $1,671.00 |
| 00677 0425 | Niacin | 9/30/90 | $7,163.00 |
| 00677 0449 | Folic Acid | 9/30/90 | $228,358.00 |
| 00677 0527 | Ferrous Sulfate | 9/30/90 | $86,745.00 |
| 00677 0540 | Potassium Chloride | 9/30/90 | $36,927.00 |
| 00677 0628 | Docusate Sodium w/ Casanthrol | 9/30/90 | $123,941.00 |
| 00677 0765 | Vitamin D 50 | 9/30/90 | $84,544.00 |
| 00677 0819 | Potassium Effervescent | 9/30/90 | $89,558.00 |
| 00677 0990 | Multi-Ferrous Folic | 9/30/90 | $77,349.00 |
| 00677 1597 | Polysaccharide | 11/1/95 | $184,756.00 |
| 00677 1604 | B-Complex | 6/30/90 | $67,255.00 |
| 00677 1652 | Glucosamine Chondrotin | 6/30/90 | $112,329.00 |
| 00677 1750 | Uni-Thera M Advanced | 9/30/90 | $41,015.00 |
| 00677 0782 | Uni-Gine Ergoloid Mesylates | 9/30/90 | $239,846.00 |
| 00677 0827 | Fortabs | 9/30/90 | $72,335.00 |
| 00677 1035 | Potassium Chloride 20 Meq | 9/30/90 | $49,866.00 |
| 00677 0622 | Zinc Sulfate 220mg | 9/30/90 | $145,594.00 |

| 00677 1678 | Sodium Fluoride Chew | 9/30/90 | $152,711.00 |
| 00677 1683 | Colchicine Tab | 9/30/90 | $464,023.00 |
| | | **TOTAL:** | **$5,213,379.00** |

(h)

| Defendant Cypress | Product | | |
|---|---|---|---|
| **NDC** | | **False FDA Approval Date** | **Amount Paid (2003 & 2006)** |
| 60258 0111 | Aquavit E | 9/30/90 | $144,877.00 |
| 60258 0121 | Calcium | 6/30/90 | $1,248.00 |
| 60258 0160 | RenaVite Rx Tablets | 11/1/99 | $57,612.00 |
| 60258 0171 | Magnesium | 9/30/90 | $1,312,016.00 |
| 60258 0172 | Mag G | 9/30/90 | $10,461.00 |
| 60258 0173 | Mag SR | 9/30/90 | $87,891.00 |
| 60258 0174 | Mag SR | 6/30/90 | $19,430.00 |
| 60258 0182 | Ferrous | 9/30/90 | $169,240.00 |
| 60258 0090 | Choline Magnesium | 9/30/90 | $105,606.00 |
| 60258 0158 | Neutral | None | $351.00 |
| 60258 0159 | Stannous Fluoride | 9/30/90 | $31,537.00 |
| 60258 0161 | Rena Vite Rx Tablets | 9/30/90 | $290,695.00 |
| 60258 0162 | Rena | 6/30/90 | $1,471,145.00 |
| 60258 0180 | Hematin Plust Tablets | 6/30/90 | $1,175,974.00 |
| 60258 0181 | Hematin F Tablets | 6/30/90 | $645,404.00 |
| 60258 0189 | FerroGels | 9/30/90 | $643,522.00 |
| 60258 0001 | Cytra-2 Solution | 9/30/90 | $1,333,097.00 |
| 60258 0002 | Cytra 3 Syrup | 9/30/90 | $306,531.00 |
| 60258 0003 | Cytra K Oral Solution | 9/30/90 | $242,444.00 |
| 60258 0005 | Cytra K Crystals | 9/30/90 | $248,522.00 |
| 60258 0006 | Phos-NaK | 6/30/90 | $604,950.00 |
| 60258 0185 | Poly-Iron | 6/30/90 | $2,858,210.00 |
| 60258 0186 | Poly-Iron | 6/30/90 | $1,651,232.00 |
| 60258 0192 | Trinate Tablets | 6/30/90 | $141,113.00 |
| 60258 0810 | Lapase | 6/30/90 | $298,519.00 |
| 60258 0811 | Dygase | 6/30/90 | $272,515.00 |
| | | **TOTAL:** | **$14,124,142.00** |

(i)

| Defendant Actavis | Product | | |
|---|---|---|---|
| **NDC** | | **False FDA Approval Date** | **Amount Paid (1996-2003)** |
| 00472 1555 | Theravite | 01/28/87 | $1,085,408.00 |
| **NDC** | | **False FDA Approval Date** | **Amount Paid (2003-2007)** |
| 00472 0924 | Diocto Syrup (Docusate) | 09/30/90 | $237,143.00 |
| 00472 0936 | Diocto Liquid (Docusate) | 09/30/90 | $1,333,700.00 |
| 00472 1465 | Ferrous Sulfate Elixir | 09/30/90 | $313,535.00 |
| 00472 1469 | Ferrous Sulfate Drops | 01/16/86 | $196,688.00 |
| | | **TOTAL:** | **$3,166,474.00** |

(j)

| Defendant Teva | Product | | |
|---|---|---|---|
| **NDC** | | **False FDA Approval Date** | **Amount Paid (1996-2003)** |
| 38245 0158 | Multivitamins | 09/30/90 | $1,625,112.00 |
| 38245 0159 | Multivitamins | 09/30/90 | $701,108.00 |
| | | **TOTAL:** | **$2,326,220.00** |

(k)

| Defendant Hawthorn | Product | | |
|---|---|---|---|
| **NDC** | | **False FDA Approval Date** | **Amount Paid (97-3rd Qtr 08)** |
| 63717 0099 | Icar-C Tablets | 09/30/90 | $1,372,874.00 |
| 63717 0100 | Icar-C Plus Tablets | 09/30/90 | $4,574,118.00 |
| 63717 0102 | Icar 15mg Pediatric | 06/30/90 | $3,112,166.00 |
| 63717 0103 | Icar 15mg Pediatric | 09/30/90 | $1,280,915.00 |
| 63717 0112 | Icar – C Plus Tablets | 09/30/90 | $1,064,876.00 |
| | | **TOTAL:** | **$11,404,949.00** |

## VI.    Causes of Action

129.    Relator realleges and incorporates by reference paragraphs 1 - 128 as though fully set forth herein.

130.    Relator brings four claims, on behalf of the United States, for treble damages and penalties under the FCA, 31 U.S.C. §§ 3729-3733, against Defendants for knowingly presenting or causing the presentment of false claims to the United States and state government Medicaid programs, from at least the 6 years preceding the filing of Relator's initial Complaint through the present.

131.    In each instance, by virtue of the false records or false statements made by Defendants in violation of 31 U.S.C. § 3729(a)(1)(B), or the false claims which Defendants presented or caused to be presented in violation of 31 U.S.C. § 3729(a)(1)(A), the United States suffered damages and therefore is entitled to treble damages under the False Claims Act, to be determined at trial, plus civil penalties of not less than $5,000 and not more than $10,000 as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 note; Public Law 104-410).

### FIRST CAUSE OF ACTION
Making or Using False Records or Statements Material to False or Fraudulent Claims
(31 U.S.C. § 3729(a)(1)(B))

132.    Defendants knowingly made and/or used false records or statements – i.e., the false records or statements made by Defendants to CMS misrepresenting their Illegal Drugs and Non-Drugs as Medicaid-eligible Covered Outpatient Drugs – –material to false claims. Defendants intended the false statements or records to be material to the decision of the United States to pay the false claims.

78

133.    In violation of 31 U.S.C. §3729(a)(1)(B), Defendants knowingly and directly submitted to the UNITED STATES, through CMS, in their Medicaid Rebate Agreements, their Quarterly Medicaid Rebate Agreement Updates (Form CMS-367), and other documentation, false information as to the status of their products as Covered Outpatient Drugs, their FDA approval dates, and/or DESI status.  Based on the Defendants' inclusion of false information in such documentation, they purported to qualify the Illegal Drugs and/or Non-Drugs as Covered Outpatient Drugs. The UNITED STATES and state governments relied on this information, and the Medicaid Program paid claims for said Illegal Drugs and/or Non-Drugs.  In turn, the UNITED STATES was damaged since it paid its FFP to the states in direct reimbursement for those Illegal Drugs and/or Non-Drugs.

## SECOND CAUSE OF ACTION
Causing False Records or Statements to be Made Which Are Material to False or Fraudulent Claims
(31 U.S.C. § 3729(a)(1)(B))

134.    Defendants knowingly caused to be made or used, false records or statements – i.e., through the use of the false records or statements made by Defendants to CMS misrepresenting their Illegal Drugs and Non-Drugs as Medicaid-eligible Covered Outpatient Drugs –material to false claims. Defendants intended the false statements or records to be material to the decision of the United States to pay the false claims.

135.    In violation of 31 U.S.C. §3729(a)(1)(B), Defendants have knowingly and directly caused the UNITED STATES, to pay the states reimbursement for Non-Drugs and Illegal Drugs inasmuch as the states submitted Form CMS-64 (Quarterly Medicaid Statement of Expenditures for the Medical Assistance Program) each quarter, and the UNITED STATES, relying on the Defendants' Quarterly Medicaid Rebate Agreement Updates (Form CMS-367), and other documentation, false information as to the status of their products as Covered Outpatient Drugs,

their FDA approval dates, and/or DESI status, paid the state claims.  In turn, the UNITED

STATES was damaged since it paid its FFP to the states in direct reimbursement for those Illegal

Drugs and/or Non-Drugs.

### THIRD CAUSE OF ACTION
Causing The Presentation of False Claims For Payment or Approval
(31 U.S.C. § 3729(a)(1)(A))

136.    In violation of 31 U.S.C. §3729(a)(1)(A), Defendants knowingly and directly

caused the submission of false claims, as they submitted to the UNITED STATES, through

CMS, in their Medicaid Rebate Agreements, their Quarterly Medicaid Rebate Agreement

Updates (Form CMS-367), and other documentation, false information as to the status of their

products as Covered Outpatient Drugs, their FDA approval dates, and/or DESI status.

137.    Based on the Defendants' inclusion of the Illegal Drugs and/or Non-Drugs in such

documentation as Covered Outpatient Drugs, these products became ostensibly eligible for

Medicaid reimbursement and therefore physicians, pharmacies and other providers submitted

claims to the Medicaid program for the Illegal Drugs and Non-Drugs. Further and alternatively,

the Defendants caused false claims through the promotion and labeling of the Illegal Drugs

and/or Non-Drugs were promoted and/or labeled as if they were appropriate for coverage or

reimbursement under the Medicaid Program, when they were not.

138.    Defendants knowingly caused to be presented false or fraudulent claims for

Illegal Drugs and Non-Drugs to the United States.

### FOURTH CAUSE OF ACTION
Causing the Presentment of False Claims For Payment or Approval
(31 U.S.C. § 3729(a)(1)(A))

139.    In violation of 31 U.S.C. § 3729(a)(1)(A), Defendants have knowingly caused

states to submit false claims to the UNITED STATES in various CMS Forms, including Form

CMS-64 (Quarterly Medicaid Statement of Expenditures for the Medical Assistance Program), by falsely certifying that all drugs paid for were in compliance with federal law.  Defendants caused states to submit said false claims by their acts of submitting false information to the UNITED STATES, through CMS, in their Medicaid Rebate Agreements, their Quarterly Medicaid Rebate Agreement Updates (Form CMS-367), and other documentation, as to the status of their products as Covered Outpatient Drugs, their FDA approval dates, and/or DESI status.  Based on the Defendants' inclusion of false information in such documentation, they purported to qualify the Illegal Drugs and/or Non-Drugs as Covered Outpatient Drugs.

140.    Defendants knowingly caused to be presented false or fraudulent claims for payment or approval of their Illegal Drugs and Non-Drugs to the United States.

WHEREFORE, Relator respectfully requests this Court to enter Judgment against Defendants, as follows:

(a)    That the United States be awarded damages in the amount of three times the damages sustained by the United States because of the false claims alleged within this Complaint, as the Federal Civil False Claims Act, 31 U.S.C. § 3729 *et seq*., provides.

(b)    That the maximum civil penalties be imposed for each and every false claim that Defendants presented or caused to be presented under the Federal False Claims Act.

(c)    That pre-judgment and post-judgment interest be awarded, along with reasonable attorney's fees, costs, and expenses which the Relator necessarily incurred in bringing and pressing this case;

(d)     That the Relator be awarded the maximum amount allowed pursuant the Federal

       False Claims Act.

(e)     That this Court award such other and further relief as it deems proper.

DATED this 14th day of January, 2011.

                                   Respectfully submitted,

By:     */s/ Leo V. Boyle*
        Leo V. Boyle, BB0 # 025700
        Peter J. Black, BBO # 004407
        Michael B. Bogdanow, BBO # 544274
        Meehan, Boyle, Black & Bogdanow, P.C.
        Two Center Plaza, Suite 600
        Boston, MA  02108-1922
        Telephone: (617) 523-8300
        Fax: (617) 523-0525

        John Roddy, BB0 # 424240
        Elizabeth Ryan, BBO # 549632
        Kevin Costello, BBO # 669100
        Roddy Klein & Ryan
        727 Atlantic Ave, Second Floor
        Boston, MA  02111
        Telephone: (617) 357-5500   Ext. 16
        Fax: (617) 357-5030

        Nolan & Auerbach, P.A.
        Marcella Auerbach (*pro hac vice*)
        Fla. Bar No.: 249335
        Kenneth J. Nolan, Esq. (*pro hac vice*)
        Fla. Bar No.: 603406
        435 N. Andrews Ave., Suite 401
        Fort Lauderdale, FL 33301
        Phone: (954) 779-394
        Fax: (954) 779-3937

## CERTIFICATE OF SERVICE

I hereby certify that on January 14, 2011 foregoing was filed through the ECF system and sent

by electronic mail to the following:

Gregg Shapiro, Esq.          Gregg.Shapiro@usdoj.gov
Assistant U.S. Attorney
United States Attorney's Office
One Courthouse Way
Boston, MA 02210

Sanjay Bhambhani, Esq.       Sanjay.Bhambhani@usdoj.gov
Trial Attorney
U.S. Department of Justice
601 D Street NW, Room 9222
Washington, DC 20530

| | |
|---|---|
| **Abbott Laboratories, Inc.**<br>Stephen A. Jonas, Esq.<br>Wilmer Cutler Pickering Hale and Dorr<br>60 State Street<br>Boston, MA 02109 | stephen.jonas@wilmerhale.com |
| **Actavis Mid-Atlantic, LLC**<br>John R. Fleder, Esq.<br>Hyman, Phelps & McNamara, P.C.<br>700 Thirteenth Street, N.W.<br>Suite 1200<br>Washington D.C. 20005<br><br>Peter E. Ball, Esq.<br>Ryan M. Cunningham, Esq.<br>Sally & Fitch LLP<br>One Beacon Street<br>Boston, MA 02108 | jfleder@hpm.com<br><br><br><br><br><br>peb@sally-fitch.com<br>rmc@sally-fitch.com |
| **Biovail Pharmaceuticals, LLC**<br>Geoffrey E. Hobart, Esq.<br>Covington & Burling LLP<br>1201 Pennsylvania Avenue, NW<br>Washington, D.C.  20004 | ghobart@cov.com |

| | |
|---|---|
| **Blansett Pharmacal Company, Inc.**<br>John Thurman, Esq.<br>Thurman Law<br>700 East Ninth Street, Unit 1K<br>Little Rock, AR 72202 | jthurman@thurman-law.com |
| **Cypress Pharmaceuticals, Inc.**<br>Jack Cinquegrana, Esq.<br>Christine G. Solt, Esq.<br>Heather A. Golding, Esq.<br>James W. Evans, Esq.<br>Choate Hall & Stewart LLP<br>Two International Place<br>Boston, MA 02110 | rjcinquegrana@choate.com<br>csolt@choate.com<br>hgolding@choate.com<br>jevans@choate.com |
| **Duramed Pharmaceuticals, Inc.**<br>Jennifer G. Levy, Esq.<br>Michael C. Occhuizzo, Esq.<br>Kirkland & Ellis LLP<br>655 Fifteenth Street, N.W.<br>Washington, D.C. 20005<br><br>Jay P. Lefkowitz, Esq.<br>John P. Del Monaco, Esq.<br>Devora Whitman, Esq.<br>Kirkland & Ellis LLP<br>601 Lexington Avenue<br>New York, NY 10022<br><br>Robert J. Muldoon, Jr., Esq.<br>Sherin and Lodgen LLP<br>101 Federal Street<br>Boston, MA 02110 | jennifer.levy@kirkland.com<br>michael.occhuizzo@kirkland.com<br><br>lefkowitz@kirkland.com<br>john.delmonaco@kirkland.com<br>devora.whitman@kirkland.com<br><br>rjmuldoon@sherin.com |
| **Ferndale Laboratories, Inc.**<br>Paul Shaw, Esq.<br>Leanne E. Hartmann, Esq.<br>K&L Gates LLP<br>One Lincoln Street<br>Boston, MA 02111<br><br>David F. DuMouchel, Esq.<br>Laurie J. Michelson, Esq.<br>Mary Mullin, Esq. | paul.shaw@klgates.com<br>leanne.hartmann@klgates.com<br><br>dumouchd@butzel.com<br>michelso@butzel.com<br>mullin@butzel.com |

| | |
|---|---|
| Butzel Long<br>150 West Jefferson<br>Suite 100<br>Detroit, MI 4822 | |
| **Goldline Laboratories, Inc.**<br>Jennifer G. Levy, Esq.<br>Michael C. Occhuizzo, Esq.<br>Kirkland & Ellis LLP<br>655 Fifteenth Street, N.W.<br>Washington, D.C. 20005<br><br>Jay P. Lefkowitz, Esq.<br>John P. Del Monaco, Esq.<br>Devora Whitman, Esq.<br>Kirkland & Ellis LLP<br>601 Lexington Avenue<br>New York, NY 10022<br><br>Robert J. Muldoon, Jr., Esq.<br>Sherin and Lodgen LLP<br>101 Federal Street<br>Boston, MA 02110 | jennifer.levy@kirkland.com<br>michael.occhuizzo@kirkland.com<br><br><br><br>lefkowitz@kirkland.com<br>john.delmonaco@kirkland.com<br>devora.whitman@kirkland.com<br><br><br><br>rjmuldoon@sherin.com |
| **Hawthorn Pharmaceuticals, Inc.**<br>Joseph Zwicker, Esq.<br>Brian C. Barry, Esq.<br>Christine G. Savage, Esq.<br>Heather A. Golding, Esq.<br>James W. Evans, Esq.<br>Choate Hall & Stewart LLP<br>Two International Place<br>Boston, MA 02110 | jzwicker@choate.com<br>bbarry@choate.com<br>csavage@choate.com<br>hgolding@choate.com<br>jevans@choate.com |
| **Healthpoint, Ltd.**<br>Mona M. Patel, Esq.<br>Ethan M. Posner, Esq.<br>Covington & Burling LLP<br>1201 Pennsylvania Avenue, NW<br>Washington DC 20004-2401 | mpatel@cov.com<br>eposner@cov.com |
| **Hi-Tech Pharmacal Company, Inc.**<br>James S. Cohen, Esq.<br>McDermott Will & Emery LLP<br>600 Thirteenth Street N.W. | jscohen@mwe.com |

| | |
|---|---|
| Washington, DC 20005-3096 | |
| **Medpointe, Inc. n/k/a Meda Pharmaceuticals**<br>Jacqueline C. Wolff, Esq.<br>Nirav Shah, Esq.<br>Joanna R. Helferich, Esq.<br>Manatt, Phelps & Phillips, LLP<br>7 Times Square<br>New York, NY 10036 | jwolff@manatt.com<br>nshah@manatt.com<br>jhelferich@manatt.com |
| **Mylan Inc.**<br>Adam Hoffinger, Esq.<br>Robert A. Salerno, Esq.<br>Morrison & Foerster LLP<br>2000 Pennsylvania Ave., NW<br>Washington D.C. 20006-1888 | ahoffinger@mofo.com<br>rsalerno@mofo.com |
| **Pamlab, LLC**<br>Robert S. Rooth, Esq.<br>Chaffe McCall, L.L.P.<br>2300 Energy Centre<br>1100 Poydras Street<br>New Orleans, LA 70163-2300 | rooth@chaffe.com |
| **Qualitest Pharmaceuticals, Inc. n/k/a Propst Distribution, Inc.**<br>Peter S. Brooks, Esq.<br>Seyfarth Shaw<br>Two Seaport Lane<br>World Trade Center<br>Boston, MA 02210-2001 | pbrooks@seyfarth.com |
| **Rugby Laboratories, Inc.**<br>James W. Matthews, Esq.<br>Katy E. Koski, Esq.<br>Sherin and Lodgen LLP<br>101 Federal Street<br>Boston, MA 02110 | jwmatthews@sherin.com<br>kekoski@sherin.com |
| **Sciele Pharma, Inc.**<br>Geoffrey E. Hobart, Esq.<br>Covington & Burling LLP<br>1201 Pennsylvania Avenue, NW<br>Washington, D.C. 20004 | ghobart@cov.com |

| | |
|---|---|
| **Shire US, Inc.**<br>Fred A. Kelly, Jr., Esq.<br>Jennifer Corvo, Esq.<br>David Ryan, Esq.<br>Nixon Peabody LLP<br>100 Summer Street<br>Boston, MA 02110-2131 | fkelly@nixonpeabody.com<br>jcorvo@nixonpeabody.com<br>dryan@nixonpeabody.com |
| **Teva Pharmaceuticals USA, Inc.**<br>Jennifer G. Levy, Esq.<br>Michael C. Occhuizzo, Esq.<br>Kirkland & Ellis LLP<br>655 Fifteenth Street, N.W.<br>Washington, D.C. 20005<br><br>Jay P. Lefkowitz, Esq.<br>John P. Del Monaco, Esq.<br>Devora Whitman, Esq.<br>Kirkland & Ellis LLP<br>601 Lexington Avenue<br>New York, NY 10022<br><br>Robert J. Muldoon, Jr., Esq.<br>Sherin and Lodgen LLP<br>101 Federal Street<br>Boston, MA 02110 | jennifer.levy@kirkland.com<br>michael.occhuizzo@kirkland.com<br><br><br><br>lefkowitz@kirkland.com<br>john.delmonaco@kirkland.com<br>devora.whitman@kirkland.com<br><br><br><br>rjmuldoon@sherin.com |
| **The Harvard Drug Group, LLC d/b/a Major Pharmaceuticals**<br>Larri A. Short, Esq.<br>D. Jacques Smith, Esq.<br>Randall Brater, Esq.<br>Arent Fox LLP<br>1050 Connecticut Avenue, NW<br>Washington D.C. 20036-5339<br><br>Daniel R. Deutsch, Esq.<br>Deutsch Williams Brooks<br>   Derensis & Holland, P.C.<br>One Designe Center Place<br>Suite 600<br>Boston, MA 02210 | short.larri@arentfox.com<br>smith.jacques@arentfox.com<br>brater.randall@arentfox.com<br><br><br><br>ddeutsch@dwboston.com |
| **United Research Laboratories, Inc.**<br>Robert B. Lovett, Esq. | rlovett@cooley.com |

| | |
|---|---|
| Cooley Godward Kronish LLP<br>500 Boylston Street<br>Boston, MA 02116-3736<br><br>Mazda K. Antia, Esq.<br>Meghan O'Ryan Spieker, Esq.<br>Ryan E. Blair, Esq.<br>Cooley LLP<br>4401 Eastgate Mall<br>San Diego, CA 92121-1909 | <br><br><br>mantia@cooley.com<br>mspieker@cooley.com<br>rblair@cooley.com |
| **Warner Chilcott Corporation**<br>Geoffrey E. Hobart, Esq.<br>Covington & Burling LLP<br>1201 Pennsylvania Avenue, NW<br>Washington, D.C.  20004 | ghobart@cov.com |
| **Watson Laboratories, Inc.**<br>James W. Matthews, Esq.<br>Sherin and Lodgen LLP<br>101 Federal Street<br>Boston, MA 02110 | jwmatthews@sherin.com |

*/s/ John Roddy*
John Roddy